## BEATTY v. THE CENTRAL IOWA R. CO.

1. **Railroads:** PROXIMITY TO HIGHWAYS: NEGLIGENCE. The mere fact that a railway is constructed and operated in close proximity to a highway, although it may render the use of the highway less safe, does not of itself constitute negligence on the part of the railway company. Such increase of danger is necessarily incident to and attendant upon this improved mode of transportation.

2. ————: ————: DAMAGES: CARE AND DILIGENCE. In an action for personal injuries, the proper inquiry is whether, in the light of all the existing circumstances, the company exercised reasonable care and diligence to guard against danger.

3. ————: ————: HIGHWAY CROSSING. Under the facts found in this case, that portion of the highway from the point where the railroad track first infringes upon the highway, to the point of actual crossing, cannot be regarded as a part of the highway crossing.

*Appeal from Poweshiek District Court.*

SATURDAY, APRIL 22.

THE plaintiff as administratrix of the estate of John W. Beatty, deceased, brings this action to recover damages for the death of said John W. Beatty, occasioned by a train of cars operated by the receiver of the Central Railroad of Iowa. Under the direction of the court, the jury returned only a special verdict. Both parties filed a motion for judgment upon the special findings. The court overruled the plaintiff's motion for judgment, and sustained that of the defendant. The plaintiff appeals.

*John F. Lacy* and *Redman and Carr*, for appellant.

*H. E. J. Boardman* and *A. C. Daly*, for appellee.

DAY, J.—The jury returned the following special verdict:

1. Was the plaintiff's intestate killed at a point where the railroad crosses the public highway substantially as stated in the petition?

Ans. Yes.

2. Was the railroad then operated and under the control of Morrill as receiver?

Ans. Yes.

3. How did the plaintiff's intestate come in collision with the engine?

Ans. He was carried there by an unmanageable horse.

4. Was the crossing and its immediate approaches in a suitable and safe condition?

Ans. It was.

5. If you say the crossing was not in a suitable and safe condition, then it what particular was it lacking?

6. Does the railroad cross the highway on a level with it about the point of crossing or otherwise?

Ans. Nearly on a level.

7. How far north of the immediate crossing does the defendant's track or ground by it actually occupied first enter upon the ground of the highway?

Ans. About twenty rods.

8. From the point where the railroad track first enters upon the highway south to the crossing could the railroad company reasonably have graded a track for wagons farther to the west on the highway?

Ans. Yes.

9. Was the highway passable along its west line without such grading or preparing?

Ans. No.

10. How far north of the immediate crossing is the point where the plaintiff's intestate mounted his horse to ride down to the crossing?

Ans. About twenty rods.

11. At the place he mounted his horse did he have a view of the railroad north?

Ans. No.

12. From the point where he came upon the highway south of the crossing was the railroad in plain view to the side of the road or was the view obstructed?

Ans. From the crossing north for a distance of 292 feet the track was in plain view, the remainder of the distance the track was entirely obscured.

13. How far north from the crossing is the point where the mounds of earth thrown up in grading first occur?

Ans. Twenty or twenty-one rods.

14. If the track of the highway had been graded or pushed to the west line of the highway, would the accident or injury have occurred?

Ans. It would not.

15. Did the deceased, when he entered upon the highway to come down to the crossing, not know that the railroad crossed there; and did he know of the character and condition of the crossing and road leading down to it, and the proximity of the road?

Ans. He did.

16. Did the deceased look for the train or make any effort to see if a train was approaching; if you say he did, then at what point was he, and what did he do to ascertain whether a train was coming?

Ans. The evidence does not show whether he did or not.

17. What was the character of the horse the deceased rode, as to disposition and training?

Ans. A spirited young horse not thoroughly trained.

18. At and before the accident and collision had the horse become frightened, and had the deceased lost control of him, and if so, then how far north of the plank crossing had he thus lost control of the horse?

Ans. The horse became frightened and the deceased lost control of him at a distance of from twelve to fifteen rods from the crossing.

19. When riding down to the crossing, was the deceased exercising due care aside from keeping a lookout for an approaching train?

Ans. He was.

20. When the railroad was constructed by the company did it appropriate for its track any part of the traveled track

of the highway as then traveled; if so, for what distance north of the plank crossing, and what did it do to restore such traveled track? State fully?

Ans. From 12 to 15 rods north, and made a roadway with dirt, 12 to 19 feet wide and nine feet high on the west side of said fill.

21. Was the track in the highway used by Beatty from the school-house north?

Ans. It was.

21½. What, if anything, had the railroad company, when constructing its track, done towards making this track for travel on the highway?

Ans. They made a cut through the hill and a fill on the flat.

22. Was the injury to Beatty caused by any defect on the crossing or its immediate approach, or was it because the traveled track on the highway turned to make the crossing over the railroad track and while running parallel with the railroad track the two were in close proximity?

Ans. Caused by the proximity of the two roads north of the immediate crossing.

23. What damage did the estate of Beatty sustain by reason of his death?

Ans. $5,000.

24. Did the Central Iowa Railway Company purchase the railroad under the decree of foreclosure, a certified copy of which is introduced, and did it take possession under said decree?

Ans. Yes.

25. Was the claim presented to the Central Iowa Railway Company after it came into possession of the railroad under said decree, and was payment refused?

Ans. Yes.

The following diagram shows the relative situation of the railway and of the highway, and illustrates the special verdict:

The railway was constructed in 1871. At the time this railroad was constructed the provisions of the statute upon the subject were as follows: "Any such corporation may raise or lower any turnpike, plank road, or other highway, for the purpose of having its railway pass over or under the same; and in such cases said corporation shall put such highway as soon as may be, in as good repair and condition as before such alteration. Revision, § 1321; Code of 1873, § 1262. "Every corporation constructing or operating a railway shall * * * construct at all points where such railway crosses any public highway, good, sufficient, and safe crossings and cattle guards." Revision, § 1331; Code of 1873, § 1288.

The jury have found specially that the crossing and its immediate approaches were in a sutiable and safe condition. They have not found that there was anything negligent or improper in the manner in which the highway was prepared for the public travel, between the point of impingement between the railway and the highway, and the actual crossing. The jury have found that the cause of the accident was the proximity of the two roads north of the immediate crossing. Now the defendant cannot be held liable for the injury unless it was guilty of some act of negligence. The mere constructing of a railway in close proximity to a highway, is not, in itself, an act of negligence. Railways, if constructed at all, must of necessity, cross over highways. The statute confers this right. Railways cannot always approach highways at right angles; if they approach at very acute angles, as they sometimes do, it is apparent that they must, of necessity, run for some distance in close proximity to, and almost parallel with them. The mere fact that they so run, although it may render the use of the highway less safe, does not of itself constitute negligence upon the part of the railway company. Such increase of danger is necessarily incident to, and attendant upon, this improved mode of transportation. All persons must accept the advantages of this mode of intercommunication with the danger and inconveniences which necessarily attend it; the price of progress

1. RAILROADS: proximity to highways: negligence.

cannot be withheld. The appellant has argued this case as though the statute required the railway company should make the highway as safe as before the alteration; the statute does not so require. Such a requirement, could not, in the nature of things, be complied with. It is not possible that a highway crossed by a railroad, shall be as safe as before the railroad was constructed; there will, and always must be, some danger from collision, and from fright to animals, which did not exist before; the statute simply requires that the highway shall be placed in as good repair and condition as before the alteration. It is true the jury have found that the railway company could reasonably have graded a track for wagons farther to the west of the highway, and that if the track of the highway had been graded or pushed to the west line of the highway, the accident would not have happened. But, it is not found that the failure to grade the highway to the west line of the highway was negligence on the part of the company, under the circumstances proved, and we cannot say, as a matter of law that such failure was negligence. If the railway had approached the highway at right angles, and been plainly visible for half a mile before reaching the crossing, it may fairly be assumed that the accident would not have happened. And yet we cannot say, as a matter of law, that the railway company was guilty of negligence in not constructing its road in that manner. If deceased had ridden an old, gentle and well trained horse, instead of a young, spirited and not thoroughly trained one, it may well be assumed that the accident would not have happened; yet it would scarcely do to hold that deceased was guilty of contributory negligence because he rode a young and spirited horse; and yet, there would be as much propriety in so holding, as in declaring, as a matter of law, that the defendant was guilty of negligence because it did not grade the track for the travel on the west line of the highway. After an accident has occurred it is generally easy 2. ——: ——: to see how it might have been avoided. The damages: care and diligence. proper inquiry is not whether the accident might have been avoided, if the company had anticipated its occur-

rence in the manner that it happened, but whether, in the light of all the existing circumstances the company exercised reasonable care and diligence to guard against danger. The special findings of the jury show that the company graded a track for the travel from twelve to nineteen feet wide. It does not appear but that the highway was thus placed in as good repair and condition as before the alteration of the highway by the railroad company. The appellant's argument throughout, is

3. ——:——: grounded upon the position that all that portion highway crossing: of the highway between the point where it actually crosses the railway track, and the point where the railway track impinges upon the original highway, twenty rods north of the actual crossing, is to be deemed a part of the crossing, and that the court in its decision overruled the case of *Farley v. The C. R. I. & P. R'y. Co.*, 42 Iowa, 234. This position of the appellant is clearly incorrect. All that was held in that case was that the embankment which is constructed as a necessary approach to the railway track is, in legal contemplation a part of the crossing. It appears from the findings of the jury in the case at bar that the railroad crosses the highway nearly on a level with it. There could therefore be no necessity for an embankment twenty rods long in order to reach the actual crossing. Under the facts found in this case no portion of the highway running parallel, or nearly parallel with the railroad, can be regarded as a part of the crossing. Under the findings of the jury there has been a full compliance with section 1288, and it does not appear that there has been any failure to comply with section 1262. No facts have been found from which we are authorized to declare that the company has, as a matter of law, been negligent. It follows that the court did not err in rendering judgment for the defendant, and overruling the plaintiff's motion for judgment upon the special findings.

AFFIRMED.