### MYERS v. CHICAGO. M. & ST. P. RY. CO.

(Circuit Court, N. D. Iowa, W. D. June 4, 1900.)

1. RAILROADS—PERSONAL INJURY—DEFECTIVE CROSSING—EVIDENCE—INSTRUCTIONS TO JURY—NEW TRIAL.

Plaintiff's horse became frightened at one of defendant's trains, but followed the highway until it came to the railway crossing, when plaintiff was thrown out of her buggy by the severity of a jolt caused by the wheels striking the covering to a waterway under the road, which was so constructed as to form a ridge across the highway. The evidence showed that the ridge was not an obstruction to the safe use of the crossing, under ordinary circumstances, and that, if plaintiff's horse had been traveling at a reasonable rate of speed, plaintiff would have been carried over the crossing without injury. *Held*, that the court properly instructed the jury that defendant was not negligent in permitting the ridge at the crossing to exist.

2. SAME—PROXIMATE CAUSE—EVIDENCE—INSTRUCTIONS TO JURY.

It appearing from the evidence that defendant was not negligent in permitting the ridge at its railroad crossing to exist, because of its safety for ordinary travel, the court properly instructed the jury that the condition of the crossing was not the proximate cause of the accident to plaintiff, though the contact of the wheels of her buggy therewith, while her horse was running away, caused her to be thrown out and injured.

On motion for new trial filed by plaintiff.

Lewis & Lewis, for plaintiff.

Shull & Farnsworth and H. H. Field, for defendant.

SHIRAS, District Judge. On July 16, 1898, the plaintiff received severe personal injuries from being thrown from a buggy in which she was riding, at a crossing over the line of the defendant railway

company near the town of Akron, in Plymouth county, in this state. For the recovery of the damages thus caused the plaintiff, this action was brought, and on the trial before the court and jury the plaintiff based her right of recovery on two grounds: First, that the railway company negligently caused or permitted steam to escape from an engine upon its track, thereby frightening the horse drawing the buggy in which plaintiff was seated, and causing it to run away; and, second, that the crossing of the highway over the railway, which it was the duty of the defendant company to keep in safe condition for use by the public, was in bad and unsafe condition, and as a result the plaintiff was thrown from the buggy, and received the injuries complained of.

The evidence on the trial showed that the plaintiff and her daughter, the latter driving the horse, were passing along the highway at a point where it approached the crossing, and while at some little distance from the crossing a freight train overtook them, and the horse took fright thereat, and ran away, but in its flight followed the highway until it reached the railway crossing, when first the plaintiff, and then the daughter, were thrown from the vehicle. Upon the question whether steam was negligently allowed or caused to escape from the engine, thereby frightening the horse, the evidence was in conflict; and the court instructed the jury that if they found from the evidence that, when approaching the crossing, the parties in charge of the engine negligently caused or permitted steam to escape from the engine, thereby frightening the horse, that would justify them in finding a verdict for the plaintiff, without regard to the question of the good or bad condition of the crossing; for the evidence clearly showed that the rapid speed of the horse caused the plaintiff to be thrown from the buggy, and therefore, as the rapid speed of the runaway horse was due to its fright, if that was caused by the negligence of the company in causing or permitting the escape of the steam from the engine, then the proper causal connection was proven to exist between the negligent act of the company and the resulting injury to the plaintiff. The court further instructed the jury that if they found under the evidence that the defendant company was not in fault in causing the fright of the horse, or, in other words, did not negligently cause or permit the escape of steam from the engine, then the verdict must be for the defendant, for the reason that the evidence would not justify them in finding that the condition of the crossing was the proximate cause of the accident.

Under these instructions, the jury found for the defendant; thus finding that the fright of the horse was not caused by any negligence or fault on part of the railway company. The plaintiff now moves for a new trial on the ground that the court erred in not submitting to the jury the question of the condition of the crossing, and in ruling that, under the evidence, its condition was not the proximate cause of the accident to plaintiff. In support of the motion for new trial, it is earnestly contended by counsel for plaintiff that the facts of the case bring it within the rule recognized in that class of cases of which Manderscheid v. City of Dubuque, 25 Iowa, 108, is a fair type. In that case plaintiff's horses ran away, and in passing over

a bridge forming part of one of the city streets one of the horses fell into a hole in the bridge, and broke its leg. It was ruled that the plaintiff could recover for the injury thus caused to the horse. The principle recognized in this class of cases is that if there is a defect in the highway of such a nature that it may cause injury in the ordinary use of the highway, and if in fact an injury is caused to person or property by such defect, then a recovery may be had against the party whose negligence caused the defect, even though the primary cause of the accident may be traceable to another matter, such as the running away of the horse or the like. In these cases it will be found that the defect was of such a nature as to cause danger in the ordinary use of the highway, such as a hole in a bridge, an excavation in a street, an unfenced or unprotected embankment, or the like. In other words, the defect was such that it would constitute in itself an efficient cause of injury without regard to the speed of the vehicle suffering the accident, although the resultant damages might be increased in case of a rapidly moving wagon or carriage.

In the case now before the court it was claimed on behalf of the plaintiff on the trial that the crossing in question was in bad condition in several particulars; that at the point where the highway turned to meet the approach to the crossing proper there was a mud hole at one side of the traveled track; that there was a sluice or waterway constructed under the wagonway, distant some ten or more feet from the rail of the track; that the top of this waterway, which extended across the highway practically at a right angle, was about a foot higher than the top of the rails, distant ten feet or more; and that the planks forming the crossing at the rails had become worn, so that the rails were one or two inches higher than the planking. The evidence wholly failed to show that the mudhole at the side of the traveled track contributed in any degree to the accident, but it was clearly proven that when the buggy reached the covered waterway the bump or jolt resulting from its passage over the ridge formed by the covering of the waterway was such as to throw the plaintiff out of the vehicle, and upon the ground, thus causing the injuries complained of to the person of the plaintiff. This "ridge," to call it such, had existed in the highway for years. It had been driven over daily by all who had occasion to use the crossing. It was not shown or claimed that it had ever caused an accident to any one. The evidence, without contradiction, was to the effect that the ridge was not an obstruction to the safe use of the crossing, under usual and ordinary circumstances. The testimony of the persons who had been in the habit of driving over this crossing proved that, if the plaintiff's horse had been traveling at any reasonable, even though fast, rate, the plaintiff would have been carried over the crossing without injury. The plaintiff was undoubtedly thrown out of the buggy by the severity of the jolt caused by the wheels striking the so-called "ridge," but the dangerous character of the jolt was due to the rapid speed of the horse, and not to any inherently dangerous condition of the crossing resulting from the existence of the ridge across the same. To sustain the contention that its presence in the highway would have justified the jury in finding that thereby the cross-

ing had not been maintained in a safe condition would require the holding, as matter of law, that it is incumbent on cities, towns, counties, and railway companies, upon whom the duty of keeping the highways in proper condition is placed, to so maintain them that they are not only in safe condition for usual and ordinary use, but to keep them in such smooth and even condition that they may be safely passed over at any rate of speed that a frightened and runaway horse may be able to attain. The inequality produced in the surface of the crossing by the so-called "ridge," due to the covering over the waterway, was not greater or more dangerous in its effect than the inequalities that exist in all the ordinary roads and highways of the country, but which do not make them at all unsafe for ordinary use by the public. From our common observation, we all well know that in nearly every mile of the highways of the country there are to be found depressions or ridges, or other inequalities of the surface of the road, which do not interfere with the safe use of the highway when traveled over in the usual and ordinary method, but which are sufficient to cause severe jolts to a vehicle passing over them at an unusual and very high rate of speed. As already stated, the evidence on the trial showed that the plaintiff was thrown from the buggy as a result of the jolt caused by the wheels striking the inequality in the surface of the roadway produced by the covering over the waterway. If thereby a cause of action was created in favor of plaintiff against the defendant, it must be because the duty and obligation is imposed upon the defendant to keep the surface of the railway at the crossing so smooth and free from all inequalities that no serious jar or jolt will be caused thereby to vehicles passing over the crossing at the unusual and high rate of speed attained by a frightened and runaway horse. This certainly is not the law, and, as the evidence clearly proved that the inequality in the surface of the crossing was not such as to prevent a safe use of the crossing in the usual and ordinary methods of travel, the court was justified in instructing the jury that there was no evidence in the case which would sustain a finding that the defendant company had been negligent in causing or permitting this inequality to exist on the surface of the highway.

Upon the trial before the jury, the plaintiff claimed that the defendant had been guilty of negligence in two particulars: First, in permitting an unnecessary escape of the steam, thereby frightening the horse, and causing it to run away, which resulted in the plaintiff being thrown from the buggy, to her injury; second, that the defendant had not exercised proper care in constructing and maintaining the crossing in safe condition for ordinary use, as a result of which the plaintiff was injured by being thrown from the vehicle in which she was riding.

It is now contended, in support of the motion for new trial, that the court erred in charging the jury that the condition of the crossing could not be held, under the facts of the case, to be a proximate cause of the accident, and consequent injury; to plaintiff. If the court was justified in the ruling that the evidence would not sustain a finding that the company had been negligent in causing or per-

mitting the existence of the ridge or inequality in the surface of
the highway, then it was justified in saying to the jury that the
proximate cause of the accident was not the condition of the cross-
ing, but it was the speed of the horse. In the brief of counsel for
plaintiff it is said: "The supreme court of the United States have
clearly, tersely, and comprehensively given us a definition of 'proxi-
mate cause' in Railway Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256,
where the court say: 'The inquiry must, therefore, always be wheth-
er there was any intermediate cause disconnected from the primary
fault, and self-operating, which produced the injury.'" If the case
now before the court was one wherein the injury complained of
resulted from the horse falling into a hole in a bridge, or into an
excavation in the highway, or over an embankment or other like
defect in the highway, then it might be maintained that the defect,
being of a character that, through its own operation, would cause
injury to the users of the highway, should well be held to be the
proximate cause of the injury resulting therefrom. The alleged de-
fect in this case was not, however, of that description. In and by
itself, it would not cause such accidents as happened to the plaintiff.
As already said, this inequality in the surface of the crossing had
existed for years, and its position was such that it must be passed
over by every vehicle that was driven over the crossing. It was
not shown that it had ever caused, or aided in causing, an accident
other than the one in which the plaintiff was injured. By itself, it
was not a self-operating or efficient cause of the accident. As is
said by the supreme court in Insurance Co. v. Boon, 95 U. S. 117,
24 L. Ed. 395: "The proximate cause is the efficient cause,—the one
that necessarily sets the other causes in operation. The causes that
are merely incidental or instruments of a superior or controlling
agency are not the proximate causes and the responsible ones, though
they may be nearer in time to the result. It is only when the causes
are independent of each other that the nearest is of course to be
charged with the disaster." Under the facts of this case, it must
be held that the primary, efficient, and proximate cause of the ac-
cident in question was the rapid speed of the horse, due to its fright-
ened condition, and that, while the ridge in the crossing aided in
giving the jolt to the buggy which caused the plaintiff to be thrown
therefrom, it was but an incident in the operation of the efficient
cause of the accident, and not an independent and self-operating
cause. If the evidence had been such that a finding of the jury to
the effect that the defendant had been negligent in allowing the
existence of the ridge at the crossing could have been sustained,
then the question would have been presented whether this negligence
did not form, at least, a contributory cause to the accident, for which
the defendant might have been held liable; but, if the court ruled
correctly in holding that the evidence was not sufficient to sustain
such a finding, then this suggested question could not arise in the
case. In view of the serious injuries caused to the plaintiff by the
accident in question, I have carefully considered the ruling at the
trial of which complaint is made, but I can find no sufficient ground
in the evidence for submitting the question of the condition of the

crossing to the jury for their consideration, and, in that view of the case, I can find no error in the instructions to the jury. The motion for new trial is therefore overruled.