A. W. GABLE et al., Administrators, Appellants, v. A. A. KRIEGE, doing business as the KRIEGE CONSTRUCTION COMPANY et al., Defendants; CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILWAY COMPANY, Appellee (and one other case).

No. 43332.

May 12, 1936.

Ralph L. Lupton, and R. S. Milner, for appellants.

Hughes, O'Brien & Hughes, for appellee.

ANDERSON, J.—This appeal presents questions involved in the two cases indicated in the title, which cases were consolidated for the purpose of trial and are presented here on one record. Both actions seek recovery for the death of two minor children. The first one is brought by the administrator of the deceased father and the second case is brought by the mother of the two minors. The actions were originally brought against the three defendants first named in the title and later, by amendments, the Chicago, Milwaukee, St. Paul & Pacific Railroad Company was made party defendant in each case. It appears that settlements were made with all of the defendants other than the railway company; the plaintiffs receiving $7,500 and entering into agreements covenanting not to sue or continue · the actions against the said first three named defendants, and reserving all rights to sue and continue the prosecution of the case against the defendant Milwaukee Railway.

There was a trial as to the railway company; at the close of all of the testimony the court sustained the defendant's motion for a directed verdict; and from such order and ruling this appeal is prosecuted.

The motion for a new trial was based on several grounds, but in ruling thereon the trial court seems to have based its ruling upon three grounds only, and these three grounds present the questions which are argued on this appeal: (1) the trial court held that the depression or hole, if one existed, was on that part of the highway over which the highway commission exercised its exclusive jurisdiction, and the railway company was not responsible for any failure to properly maintain said highway, except immediately across its roadbed structure, including the tracks and ties. (2) The trial court also held that the condition of the crossing or highway was not the proximate cause of the accident, and in discussing this question and (3), the question as to the liability of the railway company for the accident, the trial court used the following language: "One of plaintiffs' witnesses testified that the hole or depression was three inches deep. The other witnesses for the plaintiffs, with one exception, stated that it was from four to six inches deep. None of these witnesses measured the depression, and they stated on cross-examination that they did not care to say that the depression was over four inches deep at its greatest depth. Some witnesses testified that the depression was from two and a half to three feet in width; others that the depression went across the highway from east to west. All plaintiffs' witnesses testified, however, that the hole was worse and deeper at the right side of the road. The depression would be less deep and abrupt where the left wheel of the Kent truck went over the plank at the north side of the north track. The driver of the truck, Rex Kent, testified that three times on the day of the accident, and prior thereto, he, in going south, traveled on the right side of this road and noticed no depression or hole, but that the crossing was rough. The breaking of the left defective spring of the greatly overloaded truck, by letting the weight of the truck down on the left front wheel, rendered the truck uncontrollable. The lack of brakes, which were left off the truck as a matter of economy, made it impossible for the driver at that time to properly handle his truck, and to stop the excessively overloaded truck within the 100 to 150 feet it traveled before colliding with

the Gable car. These unfortunate consequences would not have been caused under the circumstances by a legally loaded truck going over this crossing, with adequate brakes and springs, at a proper rate of speed. Such consequences were too remote for the defendant railway company to be legally required to anticipate; they did not succeed naturally in the ordinary course of things. Ordinary prudence on the part of the railway company would not, under the circumstances, have suggested to the company that its act would probably result in the injury complained of. A depression or hole three inches deep has been held, in this state, under similar circumstances to be not negligence as a matter of law.''

The statement of fact as contained in the foregoing quotation is fully supported by plaintiffs' evidence.

The record discloses that state highway No. 14 runs south from the city of Marshalltown, Iowa, and has a gravel surface approximately 32 feet wide; that it is under the care and supervision of the state highway commission. Approximately 7 miles south of the city of Marshalltown the highway crosses the double tracks of the Milwaukee Railway at a very slight angle. The accident involved occurred at or near this crossing at about 2 o'clock in the afternoon of September 12, 1931. One of the original defendants, Rex Kent, was at the time in question driving down said highway from the north, approaching the said crossing. He was driving an International truck with a load of gravel, consisting of about 5 cubic yards. The testimony shows that there was an incline approaching said railway crossing with about a 5 per cent grade until it reached a point some 12 or 15 feet from the tracks of the railway company, at which point it became practically level, and continued so across and some distance south of the double tracks of the railway company. The evidence shows the truck was carrying an overload of three or four tons; that the service brakes thereon were not in working order, and that the pedals and rods operating the same had been detached, although there appears to have been some kind of an emergency brake which applied to the drive shaft of the truck, but not to the wheels. There was also a defective spring on the left front side of the truck which broke and permitted the load to settle down on the left front wheel. The left front spring shackle also broke. The testimony of the plaintiffs' witness, Rex Kent, the driver of the truck, shows that, when he

approached the track of the railway company, he hit a hole or depression, and the resulting bump or jar broke the spring and shackle and caused the truck to become out of control. He testifies he was driving down the hill twenty miles an hour, but, as he approached the crossing, he decreased his speed to about fifteen miles an hour. After the truck went out of control, it took a wobbly and uncertain course across the tracks of the railway company, and then veered at an angle toward the left or east side of the highway, and about one hundred fifty feet south of the crossing collided head on with a Chevrolet car driven by Allen Gable, who was accompanied by his wife, his two minor children, and a Mrs. Pfeifer. The collision resulted in the death of Mr. Gable, his two minor children, and Mrs. Pfeifer.

The claim of the plaintiffs is that the Milwaukee Railway Company failed to provide and maintain a good and safe crossing at the place of the accident, and the complaint in this regard, as shown by plaintiffs' petition, is: ''That the said crossing, at said time, was rough and that the planks thereon were unevenly laid. That immediately north of the north rail of the north track of said crossing on the west side of the said highway at said time there was such a drop from the highway to the level of the said rail as to make it dangerous for vehicles coming from the north on their right hand side of the highway to approach and traverse said railway crossing at a reasonable rate of speed,'' and that the concurring negligence of the railway company and the other defendants caused the accident and resulting injury and damages and was the proximate cause thereof.

In the amended and substituted petition of the plaintiffs, to which the foregoing quotation was added by an amendment, the plaintiffs alleged twenty separate grounds of negligence against the first three named defendants, and alleged that the several acts of negligence of the said first three named defendants was the proximate cause of the accident and resulting injury and damage. Among the specifications of negligence as contained in the amended and substituted petition, we find the claim that the truck was so excessively overloaded as to cause it to break down upon the public highway and become unmanagable and out of control while in operation on a public highway; that the said defendants failed to provide and keep adequate brakes on the truck as provided by section 5039 of the Code; that the defendants failed to properly inspect and repair the

truck; that the driver, Rex Kent, at the time of the accident operated the truck carelessly and heedlessly and without due caution or care; that he did not give one-half of the highway in meeting the Chevrolet car; that the truck was operated at a rate of speed which was not prudent or careful and greater than was reasonably proper under the conditions existing at and near the place of the accident, and that the driver, Rex Kent, failed to have the truck under control; failed to keep a proper lookout; failed to reduce his speed to a reasonable and proper rate when approaching and traversing a railroad track; that the truck was not adequately equipped with brakes; that it was excessively overloaded and was operated in a careless, negligent, and reckless manner without regard to the safety of others upon the highway.

The plaintiffs' evidence in no way supports the allegation of negligence as against the defendant railway company as alleged in plaintiffs' petition. It will be noticed that the negligence claimed as against the railway company is that "the crossing was rough and the planks unevenly laid; that immediately north of the north rail of the north track of said crossing on the west side of said highway there was such a drop from the highway to the level of said rail as to make it dangerous for vehicles coming from the north on the right side of the highway to approach and traverse the railway crossing at a reasonable rate of speed." The plaintiffs' evidence wholly fails to show a condition of the crossing such as is alleged in their petition. It does show, however, from the testimony of eight witnesses, four of whom were directly interested in the result of the case, that there was a hole or depression on the north side of the north rail of three or four inches in depth where the gravel had been cut out. None of the witnesses, however, agree as to the exact location, depth, or area of this depression. Some of them say that it started a few inches north of the plank lying along the north side of the north rail and extended north eighteen inches to two feet, and that it extended east and west from two feet to the entire width of the highway, and that it was from three to four inches deep at its deepest point. None of the witnesses, however, either measured or closely examined the so-called depression, and most of them simply gave their impression as to the size and depth of the depression from information they had gained by driving over the highway and observing the

depression. Several photographs of the railroad tracks and the highway immediately adjoining were identified by plaintiffs' witnesses as showing the condition of the crossing at the place and time of the accident, and in none of these photographs is there any indication of any noticeable hole or depression in the highway. It appears that the highway was constructed, surfaced, and maintained by the state highway commission up to the planking on either side of the tracks of the railroad company; that after the construction and surfacing of the highway across the railway tracks, the tracks were raised so that they were absolutely level with the surface of the adjoining highway. The space between the rails was planked with four-inch bridge lumber, and on the outside of the rails there was laid a similar plank level with the rail and level with the surface of the adjoining highway.

The plaintiffs' case must rest upon the question as to whether or not the railway company had constructed and was maintaining a proper, sufficient, and safe crossing at the point in question at the time of the accident. There is no evidence of unsafe or improper condition of the crossing other than the claimed existence of the depression or hole in question. Negligence presupposes a duty, and it is a violation of such duty that constitutes negligence. The duty which it is here claimed was violated is a statutory one. Section 8000 of the Code provides that railway companies shall at all points where the railway crosses a public road construct and maintain good, sufficient, and safe crossings, and that any railway neglecting or refusing to do so shall be liable for all damages resulting from such refusal or neglect.

The first question presented then in this case is, Was there a failure on the part of the railway company to construct and maintain a good, sufficient, and safe crossing at the place in question, and, second, if there was a hole or depression which made the crossing unsafe, was it located at such a place as would make the railway company liable? In other words, if such a defect did exist, was it on that part of the railway crossing which the railway company was in duty required to maintain? It appears without controversy that the railway crossing proper, including the rails and planks between and on either side thereof, was on a level with the surface of the highway. There was no approach of any kind to the railway crossing other than the plank laid on the outside of the rail and upon the ends of the

ties, and this plank was laid level with the surface of the highway. We are of the opinion that under the circumstances as shown by the record in this case the railway company should not be held liable for any defect existing in the highway other than that part of the highway which crosses the permanent roadbed, ties, and rails of the railway company. If the railway company can be held for a defect in the highway one foot outside of the outside plank at the crossing, then it could be held liable for any defect in the highway occurring on the entire width of the right of way of the railway company, regardless of the distance from the actual crossing. It must be remembered that in the conditions here existing the railway crossing in no way interfered with the highway crossing; that is, the roadbed, rails, and ties of the railway company were brought to an exact level with the highway on either side of the crossing. There was no grade or approach. The railway crossing was on an exact level with the highway. The railway company was required to maintain only that part of the crossing structure made necessary by the existence of the railway tracks and roadbed proper. It need not maintain approaches to a crossing not made necessary by the presence of the permanent roadbed and structures thereon. Farley v. Railway Co., 42 Iowa 234; Beatty v. Railway Co., 58 Iowa 242, 12 N. W. 332; City v. Railway Co., 154 Ill. 539, 39 N. E. 478.

A railway company should not be charged with maintaining any part of a public highway that the railway company does not change from its natural condition. If this were not so, then there is no point within the lines of the railway right of way where we may say the responsibility of the railway company ends. The established grade of the highway in the present case has eliminated the necessity of any approach to the railway crossing. In the Farley case, supra, this court stated that the object of the law in reference to railway crossings is to secure the public from the inconvenience and expense which would result from the destruction of the highways when they are crossed by railroads. And in that case we held that the structure of the crossing which the existence of the railroad renders necessary must be maintained by the railway company. We further said: ''The term crossing occurring in the statute is used to indicate the structure intended as a means of crossing the railroad.'' The same principle is restated in the Beatty case,

supra, and also in the case of City of Bloomington v. Railway Co., 154 Ill. 539, 39 N. E. 478, where the court goes quite extensively into the duty of the railway company in this regard.

As to the alleged defect itself, none of plaintiffs' witnesses testified that the depression was more than 4 inches at its deepest place. It might incidentally be noticed that fifteen or sixteen witnesses of the defendant testified that there was no such hole or depression existing. All of these witnesses except two were disinterested. The photographs which we have referred to show the physical facts to be at variance with the plaintiffs' testimony. A hole or depression of the extent that plaintiffs' testimony shows, three or four inches deep at its deepest point and not abrupt but cupped out by travel, would not render a highway unsafe for travel in the ordinary and reasonable manner of traveling thereon.

In Peterson v. Railway Co., 185 Iowa 378, 170 N. W. 452, 455, a case very similar in its facts to the case at bar, the negligence in the construction and maintenance of the railway crossing was predicated on the fact that the surface of the highway north and south of the planks of the railway crossing was the thickness of a plank below the top of the planks, and in ruling upon this question this court said: "While it is true that, under this statute, a duty rested on the company to construct a good, sufficient, and safe crossing, and that a neglect to discharge this duty would render the company liable for all damages sustained by the neglect, yet we have to say that a railway company is not bound, even under this section, to make the crossing absolutely safe. All that is required of the company is to make it reasonably safe for travel. It has the right to cross the highway with its tracks. It is bound not to unreasonably interfere with the safe travel upon the public highway, in the use of it for its own purposes. To that end, it becomes the duty of the company to make the crossing, over its tracks, reasonably safe for travelers upon the highway who use it in the usual and ordinary way. That there was an attempt to do this the record concedes. That the planks used were proper planks to be used for that purpose, must be conceded. That the company had planked between its rails and on either side of its rails with planks from two to three inches thick, the record in this case shows. An accident occurred, and, we may assume, occurred because the engine struck the edges of these planks, and died upon the track. The

fact that plaintiff's engine died because of contact with the edge of these planks, from the jolt or jar received from the planks, does not establish that the crossing was negligently constructed. The most that it does prove is that the roadbed on the south side of the planks was from two to three inches below the top of the planks. * * * It is solid. It must be solid to perform the purposes for which it is intended. The ties that support the rails extend out on either side of the rails. These ties are embedded in the ground. These planks were placed upon the ties, the bottom of the planks being on a level with the ground. The ground on either side is necessarily looser and softer than the planks, and more easily worn down. An elevation of from two to three inches between the road surface and the top of the planks does not tend to show negligence, either in the construction or maintenance of the crossing. If we should so hold, then there is scarcely a public highway in the state of Iowa that is in a reasonably safe condition for travel. The company owes only the duty to keep the highway in a reasonably safe condition; to put it in as safe condition as highways usually and ordinarily are kept for travel. It is not bound to make the highway more safe than highways usually and ordinarily are made and kept for travel. * * * From our common observation, we all know that, in nearly every mile of the highways of the country, there are to be found depressions or ridges or other inequalities of surface which do not interfere with the safe use of the highway, when traveled over in the usual and ordinary method, but which are sufficient to jolt vehicles passing over them. The severity of the jolt would depend, of course, largely upon the speed at which the vehicle is moving at the time it passes over. There is no duty resting upon a railway company to keep the surface of the road, at the crossing, so smooth and free from all inequalities that no jar or jolt will be caused by vehicles passing over the crossing. * * * 'Extraordinary care would hardly suffice to keep the surface of the ground even with the plank, and ceaseless vigilance in precaution could scarcely foresee that an accident would happen from such a cause.' "

And we held that the condition of the crossing as detailed in the foregoing quotation did not establish liability on the part of the railway company. There is so little difference, if any, in the facts in the Peterson case and in the case at bar that we are constrained to hold that there was no such defect shown

in the present case as would make the railway company liable for the accident involved in this case, even though the depression or hole complained of was of the depth and area and location as claimed by plaintiffs.

■■■ It can also be held that the condition of the highway as complained of by plaintiffs was not the proximate cause of the accident and resulting damage. The defective equipment of the truck and its overloading and excessive speed was without question the proximate cause of the accident involved in this case. The driver of the truck, as plaintiffs' witness, testified that there were no brakes thereon; that there was a load of six or seven tons of gravel, and that the overload was at least three or four tons; that he approached the crossing at twelve or fifteen miles an hour with a truck thus equipped and thus overloaded. It is certain that the left front wheel of the truck could never have gotten into the hole or depression on the west or right hand side of the highway, and the evidence clearly shows that the left front spring and shackle were broken, not from the condition existing at the crossing, but wholly on account of the defective equipment of the truck, the partial broken left spring, the overload of gravel, and the speed at which the truck was being driven. And this must be held to be the primary, efficient, and proximate cause of the resulting accident.

The reasoning and opinion of the court in Myers v. Railway Co. (C. C.) 101 F. 915, and cases cited, supports the announcement we have just made.

There are errors assigned by the appellant as to the admission and exclusion of testimony, all of which we have noticed and in regard to which we conclude could have nothing to do with the law governing the situation. There is also the ground included in the motion to direct a verdict, the question as to the release of the defendant railway company, by and through the settlement with the other tort-feasors, but this question was not passed upon by the trial court and is not presented here in argument. We refrain from discussing it.

We have examined the authorities cited by the appellant, and conclude that they are not controlling and announce no rules of law contrary to the pronouncements made in this opinion. Many of them are street and sidewalk cases, others involve railroad and street railway crossings in cities and towns, and in

none of them are the facts parallel with the facts disclosed by the record in the instant case.

We are constrained to hold that the trial court did not err in its order sustaining the motion for a directed verdict and entering judgment upon the verdict so directed. An affirmance necessarily follows.—Affirmed.

DONEGAN, C. J., and ALBERT, KINTZINGER, MITCHELL, PARSONS, HAMILTON, and RICHARDS, JJ., concur.