14447

COOPER v. SOUTH CAROLINA HIGHWAY DEPARTMENT

(190 S. E., 499)

March, 1936.

*Messrs. John M. Daniel,* Attorney General, *J. Ivey Humphrey* and *M. J. Hough,* Assistants Attorney General, .and *W. P. Robinson,* for appellant,

*Messrs. H. Hines, O. Roddey Bell, Gregory & Gregory* and *Williams, Stewart & Williams,* for respondent, 

March 3, 1937.

The opinion of the Court was delivered by Mr. Justice Bonham.

The 18th day of October, 1934, four men left Lancaster, S. C., to go to Mineral Springs, N. C. They were traveling in a Chevrolet automobile owned and driven by J. B. Marshall. The purpose of the trip was that Clyde Phillips should trade for a dog. Robert Adams went along to help Phillips select the dog. Phillips furnished five gallons of gas for the trip. Nothing was paid Marshall for the use of the car. Having accomplished their objective at Mineral Springs, they returned by a route which brought them on the paved road from Monroe, N. C., to its junction with the paved road from Charlotte, N. C., to Lancaster, which point they reached about 10 o'clock at night. Here an accident occurred in which Marshall, the driver of the car, and Robert Adams, riding on the back seat, were killed, and the other two occupants of the car were more or less, seriously injured.

Action was brought by Idell Adams, the widow of Robert Adams, under the provisions of the statute which we speak of as "Lord Campbell's Act," for the benefit of herself and her infant son. Before the case came to trial, the child had died and Idell Adams had intermarried with one Cooper. At the call of the case for trial, at the March, 1936, term of

Court, the complaint was amended to meet the changes caused by the death of the lad and the marriage of Mrs. Adams.

The case is brought under the consent that the State Highway Department may be sued, given by the act of the Legislature embodied in the Code of Laws 1932, as Section 5887, which, for the purpose of ready reference, we produce here:

*"State Highway Department May Be Sued.*—(1) Conditions and Amount of Recovery.—Any person, firm or corporation who may suffer injury to his or her person or damage to his, her or its property by reason of a defect in any State highway, or by reason of the negligent repair of any State highway, or by reason of the negligent operation of any vehicle or motor vehicle in charge of the State Highway Department while said vehicle or motor vehicle is actually engaged in the construction or repair of any of the said highways, may bring suit against the State Highway Department for the actual amount of said injury or damage not to exceed in case of property damaged the sum of fifteen hundred dollars, and in case of personal injury or death, not to exceed the sum of four thousand ($4,000.00) dollars; Provided, That the State Highway Department is hereby authorized and empowered to settle or compromise any claim in an amount not exceeding three hundred ($300.00) dollars.

"(2) *Contributory Negligence—Complaint.*—Any person, firm or corporation bringing a suit against the State Highway Department must allege and prove that he, she or it did not bring about the injury by his, her or its own negligence, nor negligently contribute thereto: Provided, That this section shall not apply to injuries on roads under construction when the highway department is protected by indemnity bond.

"(3) *Claims to be Filed—Limitation of Action.*—A claim giving the date, place where the injury or damage occurred, and the amount claimed must be made out, sworn to, and

filed with the State Highway Department within one hundred and eighty days after the alleged injury or damage. Suit, if any, must be commenced, by the service of a summons and complaint, within twelve months from the date of the injury or damage: Provided, That the time limits imposed by this section for giving notice and commencing suit shall not apply in cases of injuries or damages already sustained or claims already filed with the State Highway Department which may be compromised or settled under the provisions of subsection (1): Provided, further, That the payment of any claim or judgment under the provisions of this section shall be made from the maintenance funds of the State Highway Department.

"(4) *In Case of Death.*—Wherever the death of a person shall be caused by reason of a defect in any State highway, or by reason of the negligent repair of any State highway, or by reason of the negligent operation of any vehicle or motor vehicle in charge of the State Highway Department while said vehicle or motor vehicle is actually engaged in the construction or repair of any of said highways, under such circumstances and conditions as would have entitled the party to recover damages under the terms of this section, if death had not ensued, then in every such case the right of action for such injury and death shall survive to and may be enforced by the personal representative of such person in the same manner as is now provided by Section 412 for actions by administrators and executors, where death results from personal injuries; and said provisions shall be applicable to all such actions.

"(5) *Suits Pending.*—The provisions of this amendment (1931) shall be applicable also to all actions now pending in the Courts of this State which shall have already been commenced under the provisions of said Act (No. 1055) of the 1928 General Assembly."

The complaint, omitting formal allegations, sets forth that the Highway Department constructed State highway No.

25 and Federal highway No. 521, and negligently caused a dangerous pit about 10 feet deep to be formed at or near the junction of the two highways, and carelessly permitted it to be and remain open and insecurely guarded; that on or about October 18, 1934, plaintiff's intestate was riding as a passenger in the rear seat of an automobile owned and operated by J. B. Marshall, along State highway No. 25 to Federal highway No. 521; that the car was being driven at a lawful rate of speed, at about 10 o'clock at night; that suddenly, and without any warning to plaintiff's intestate, the automobile was on the edge of the pit above mentioned; that the driver of the automobile applied brakes and did all he could to keep from running into the pit, but in spite of his efforts the car did plunge into the pit, with *"a terrific impact and crash,* thereby causing the immediate death of plaintiff's intestate as the proximate cause thereof"; that the death of plaintiff's intestate was caused solely by the negligence of defendant in the following particulars:

(a) In forming or causing to be formed a deep hole or pit at or near the junction of State highway No. 25 and Federal highway No. 521.

(b) In permitting said hole or pit to remain at the junction of the two highways.

(c) In failing to erect a sufficient guard rail around the eastern side of said hole or pit.

(e) In failing to erect proper signs or other devices around said pit to warn motorists traveling along highway No. 25 toward highway No. 521 of the presence and danger of said hole or pit.

(f) In failing to have proper and sufficient signs around said pit at the time of the injury and death of plaintiff's intestate to warn motorists on said highway of the existence, location and extremely dangerous character of the said hole or pit.

Specifications (g) and (h) are practically the same as (e) and (f).

(i) In failing to fill in said hole or pit.

The complaint further alleges that prior to the time of this accident other automobiles traveling on this highway had run into this pit, causing the death or injury of passengers, which facts were known to the defendant; that in due time plaintiff filed claim with the defendant; that plaintiff's intestate did not bring about his own injury and death, and did not by his own acts and negligence contribute thereto.

The answer sets up a general denial, except as to the things admitted or qualified; admits Paragraphs 1 and 2 of the complaint, except the allegation in Paragraph 2 that defendant is liable and subject to a suit for the acts complained of. Admits so much only of Paragraph 3 as alleges that defendant constructed the highways therein named. Admits only so much of Paragraph 7 as alleges that the claim was properly filed.

For further defense: On information and belief that at the time and place mentioned in the complaint the deceased, Robert Adams, was in an automobile driven in the nighttime by J. B. Marshall at a high rate of speed, in such a reckless, careless, and unlawful manner, and without regard to the time and place, that said automobile was caused to leave said highway and to run —— feet and with great force into a concrete wall and other objects, and thus causing, and being the sole cause of, the injuries which it is alleged were received by plaintiff's intestate. Defendant denies that it contributed in any way thereto; that the said highway was in good repair, with sufficient signs, warning and guard rails, and safe in every way for those using it with ordinary care.

That plaintiff's intestate was in an automobile driven by J. B. Marshall, both being engaged in a common or joint enterprise; that the automobile was being operated in a careless, negligent, and unlawful manner; that such injuries as were received by plaintiff's intestate were due to their joint acts as set out above.

On the trial, motions for nonsuit, directed verdict, and new trial were duly made and refused.

The jury found for plaintiff. The appeal rests upon seven exceptions which charge error to the trial Judge for refusing to grant the motions for nonsuit, directed verdict, and new trial.

Error is imputed to the trial Judge for charging the jury that plaintiff might recover for mental anguish; and for error in charging without modication that the mortuary table was applicable to this case.

It is apparent from the record that the gravamen of the various charges of negligence against the defendant is that defendant, in constructing State highway No. 25 and Federal highway No. 521, negligently and carelessly caused a dangerous pit about 10 feet deep to be formed at or near the junction of the two highways, which it negligently permitted to remain open and insecurely guarded; in failing to have guard rails around the alleged hole or pit to protect motorists on highway No. 25; in failing to have sufficient signs or other devices around said pit to warn motorists of the presence, and place, and danger of said pit.

To these allegations of negligent acts the specifications point, except that which charges that the defendant failed to fill in said hole or pit.

We have read with special care the evidence in this case, and we fail to find a particle of it which goes to show that defendant "formed or caused to be formed a deep hole or pit at or near the junction of the two Highways," as is alleged. On the contrary, the evidence conclusively shows that the alleged "hole or pit" was a natural depression of the ground lying between the bedways of the two highways.

It was necessary, in order that plaintiff recover in this action, that she prove by the preponderance of the evidence that defendant was guilty of the acts of negligence, or one or more of them, charged against it; and that such act or acts of neglience was, or were, the prox-

imate cause of the death of plaintiff's intestate, and that plaintiff's intestate did not bring about his injuries and death, and did not negligently contribute thereto. The responsibility of plaintiff in this respect is thus stated by this Court in the case of *Lancaster v. South Carolina Power Co.,* 181 S. C., 244, 186 S. E., 911, 913: "Before the plaintiff can recover he must prove by the preponderance of the evidence one or more of the specifications of negligence alleged in the complaint; and he must recover, if at all, on the material allegations of his complaint which have been proved. He will not be allowed to have judgment on mere surmise or conjecture." See, also, *Hunsucker v. State Highway Dept.* (S. C.), 189 S. E., 652.

We do not find that plaintiff has proved her case by this measure of proof. On the contrary, we find that the evidence is conclusive that the defendant in the construction, repair, and maintenance of the highway in question has used that degree of care required of it by law. The Highway Department is not an insurer of the safety of travelers over its highways, and, as charged by the Court in this case, at the request of defendant, the duty of the Highway Department is: "To keep the highways in a reasonably safe condition for travel, and to erect and maintain sufficient signs, guard rails and warnings, as may enable users of said highways, exercising ordinary care and prudence, to avoid injury to themselves and others."

Mark you, there is imposed upon those using the highways the duty to exercise ordinary care and prudence to avoid injury to themselves and others.

We think the evidence is conclusive that defendant had erected at the place of this accident, and on the road leading to it, adequate or sufficient signs, guard rails, and warnings to enable any one using the highway and using "ordinary care and prudence" to avoid injury to himself and others.

On the contrary, we find that J. B. Marshall, the driver of the car in which plaintiff's intestate was riding when he

received the injuries from which he died, did not use ordinary care and prudence, as he was required to do, and that his negligence was the sole cause of the tragedy which resulted in the death of plaintiff's intestate.

It will aid in the analysis and application of the evidence in this case if we append hereto a map of the locus where the accident occurred. We attach a copy of the map put in evidence by defendant and set out in the record.

Here is the situation as disclosed by the record: Four men left Lancaster, S. C., about 4 o'clock in the afternoon, to go to Mineral Springs, N. C., for the purpose of trading for a dog; there is nothing in the record to show the distance between the two places. However, it appears that they returned by a·different route from that followed in going, which brought them into the paved highway from Monroe, N. C., which they pursued to its junction with highway 25, and the junction of No. 25 with highway 521, which runs from Charlotte, N. C., to Lancaster, S. C. It will be observed by the map, and the testimony shows, that at the point of junction the highway No. 25 curves in two directions, the

one on the right pointing and leading to Charlotte; the one one the left pointing and leading to Lancaster, which was the destination of these men. The road at this point forms a Y. They reached this point about 10 o'clock at night; instead of taking the fork to the left leading to Lancaster, they took that to the right leading to Charlotte. Here was the culminating act of the series of negligences by the driver of the car that led to the catastrophe.

On the road leading to the junction at the Y, and by which they approached it, and 250 feet from the prong, was a "Slow" sign, 50 feet nearer were two route and junction signs, right in the center of the Y was the large direction sign 5 x 6 feet; and running up the middle of each prong of the Y was a black line painted on the white cement. The large sign was visible at night for a distance of a quarter of a mile before you reached it.

Despite these plain signs and markers, the driver of the car apparently saw none of them. Certainly, he heeded none of them. Their direction was Lancaster. Staring them in the face as they reached the point of junction was a large direction sign pointing the way to Lancaster; notwithstanding this, they started to take the road to Charlotte. Then the car skidded 30 feet on the pavement, plowed its way through 47 feet of unpaved ground, in which it left a track $1\frac{1}{2}$ inches deep, and, reaching the lip of the depression, it flew straight across it 50 feet, without touching the earth until it struck the abutment of a culvert on route 521—127 feet from the point where it had begun to skid. Clyde Phillips, the only person testifying as to the speed of the car, said: "Well, I just didn't see how fast we were running. I imagine we were running about thirty-five or forty." As the car reached the point of junction it came up a five per cent. grade, then skidded 30 feet on the pavement, went 47 feet over the open ground to the edge of the depression, and flew 50 feet across it without touching the earth in the depression, and struck the bulkhead of the culvert on route 521. It would seem from

all these physical facts, about which there is no sort of doubt, that the car must have been traveling at a much faster rate than 40 miles an hour. There is evidence that at that rate it would have hit the ground in the bottom of the depression about 10 feet from where it left the rim, or lip thereof. But, be that as it may, the absolutely assured fact is that it flew entirely across the depression, a distance of 50 feet, without touching the earth in the depression until it struck the road on the other side. The complaint alleges that, despite the application of brakes by the driver of the car, and all his efforts to avoid it, "the car plunged into the pit, causing a terrific *impact and crash*," which caused the immediate death of plaintiff's intestate. There is no particle of proof that the car plunged into the pit, but it is uncontradicted that it flew entirely across the depression, and, when it struck the bulkhead on the other highway, there was indeed a *"terrific impact and crash,"* which demolished the car and killed the driver and plaintiff's intestate, and injured the other two occupants.

Where is any proof of negligence on the part of defendant which was the proximate cause of the injuries to and death of plaintiff's intestate? There were ample signs, warning, and notice to those using the highway as travelers thereon, if they were using it with ordinary care and prudence, as they were bound to do, to inform them of the condition of the highway; and this is true of the guard rails of the highway.

Section 1616, Volume 1, Code 1932, says: "No person shall operate any vehicle on the public roads of this State at a rate of speed greater than is reasonable and proper at the time and place, having regard to the traffic and use of the highway, and its condition."

This is especially applicable to the use of an automobile on a public highway. This Court has declared that: "It is now well recognized by the Courts, and

has been so held in a number of our decisions, that motor vehicles are dangerous instrumentalities." *Heslep v. State Highway Department,* 171 S. C., 186, 171 S. E., 913, 914.

The evidence conclusively shows that the driver of this car was using it in the nighttime over a road he had never traveled before. It also shows that he never saw or heeded the signs, warnings, and directions sufficiently provided for his guidance.

The respondent holds that it was negligence on the part of the defendant not to have filled in this depression. It does not appear that the depression was on the property of the Highway Department, or that it was obligatory on the Highway Department to fill it. Nor does it appear that it had any right to do so. But that is a matter of no concern. It is beyond cavil that, if the depression had been filled, the car would have gone over it and struck with *"a terrific impact and crash"* against the bulkhead on the other side. The car never went into the depression.

There is only one reasonable deduction to be made from all of this evidence, viz., that the negligence of J. B. Marshall, the driver of the car, was the sole cause of the injuries which resulted in the death of plaintiff's intestate.

We think it was error not to grant the motion of the defendant for a directed verdict in its favor.

"Under the well-settled rule, if only one reasonable or legitimate inference can be drawn from the evidence, the question is one of law for the Court." *Turner v. American Motorists Ins. Co.,* 176 S. C., 260, 262, 180 S. E., 55, 57.

"The case, after all, narrows down to the question if any other reasonable inference could be drawn from all of the testimony than that the proximate cause of the injury, resulting in the death of respondent's intestate, was the fast rate at which the car in which respondent's intestate was riding was being driven." *Lusk v. Highway Dept.,* 181 S. C., 101, 186 S. E., 786, 793.

In view of this conclusion, the question of whether J. B. Marshall and plaintiff's intestate were engaged in a common or joint enterprise becomes an academic issue.

Exception 6 challenges the correctness of the charge when the trial Judge said to the jury: "If you find that the plaintiff is entitled to recover, in determining such damages you may take into consideration mental anguish, if any, endured by Mrs. Adams, or Mrs. Cooper, as she is now, from the death of her husband; loss of companionship, if any; you may take these elements into consideration."

In support of this charge as it relates to mental anguish as an element of actual damages respondent relies upon the case of *Brickman v. Southern Railway*, 74 S. C., 306, 54 S. E., 553; in which are cited the cases of *Strother v. South Carolina & G. R. Co.*, 47 S. C., 375, 25 S. E., 272; *Nohrden v. Northeastern R. Co.*, 59 S. C., 87, 37 S. E., 228, 82 Am. St. Rep., 826; *Stuckey v. Atlantic Coast Line Ry. Co.*, 60 S. C., 237, 38 S. E., 416, 85 Am. St. Rep., 842.

We do not question the authority of these cases and the applicability of the doctrine of mental anguish to those cases. They were tried before the passage of the act of the General Assembly embodied in the Code of 1932 as Section 5887. Those cases were against railway companies operated for gain. The present case is against a branch agency of the State, and is brought only because the State has consented that such cases may be brought. It follows that the conditions imposed by the State must be strictly complied with, and the act must be strictly construed. In the case of *Ancrum v. State Highway Dept.*, 162 S. C., 504, 161 S. E., 98, this Court said: "This Court has held that an action against the state highway department is an action against the state; that the act of 1928 (35 Stat. p. 2055 [which is now Section 5887, Code 1932]), being in derogation of the sovereign power of the state, must be strictly construed; that one seeking to avail himself of the consent of the state

to be sued must fully comply with the prescribed terms and conditions of the statute."

The act defines the damages which may be recovered in this manner: "Any person * * * who may suffer injury to his or her person or damage *to his, her or its property* by reason of a defect, * * * may bring suit against the State Highway Department for the *actual amount* of said injury or damage," etc. (Italics added).

It will be noted that the act limits the recovery to the *actual amount* which the person suing has suffered by injury to his person or damage to his property. It will be conceded that the *actual amount* which one has suffered in the nature of mental anguish cannot ever be proved in dollars and cents, but must be left to be fixed by the jury in its discretion. It seems clear that, when the Legislature used the words "actual damages," it used them in their literal sense, and meant such damages as could actually be shown to have been suffered.

The exception which challenges the charge of the Court hereabout must be sustained.

We think there was no error in submitting the mortuary table to the consideration of the jury. Perhaps the Court should have limited its use and application to the time which elapsed between the death of plaintiff's intestate and her remarriage to Mr. Cooper, and to the difference between the amounts earned by her deceased husband and her present husband. However, it does not appear from the record that defendant's counsel asked the Court to charge thereabout, and there is no way of telling how much of the amount included in the verdict came from this source. The exceptions thereabout are overruled.

The judgment of the lower Court is reversed, and the case is remanded to that Court, with direction to enter judgment for the defendant.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BAKER and FISHBURNE concur.

MR. JUSTICE CARTER dissents.