15866

EPPS v. S. C. STATE HIGHWAY DEPARTMENT
VAN LIEW v. S. C. STATE HIGHWAY DEPARTMENT
(39 S. E. (2d), 198)

*Messrs. John M. Daniel,* Attorney General, and *T. C. Callison* and *M. J. Hough,* Assistant Attorneys General, of Columbia, and *Huger Sinkler,* of Charleston, for Appellant,

*Messrs. John I. Cosgrove* and *J. D. E. Meyer,* of Charleston, for Respondents,

August 14, 1946.

Mr. Chief Justice Baker delivered the opinion of the Court.

These two cases arose out of the same accident, were tried together in the Circuit Court, and come to this Court on one transcript of record. We will treat them as one case here, any reference to the respondent including both plaintiffs-respondents.

The action was brought under Section 5887 of the Code of 1942, and arose out of an accident occurring at or near the intersection of State Highways Numbers 525 and 531 in that section of the County of Charleston known as North Charleston.

At the locale of the accident, these highways form a T, Highway Number 525 having a dead-end as it reaches Highway Number 531. The first-mentioned highway runs north and south, the second, east and west. Both highways have a vehicular driving width of forty-nine (49) feet, and immediately to the north of Highway Number 531 is a concrete curb six (6) inches high, then a grass plot thirteen (13) feet wide, then a paved sidewalk six (6) feet wide, and just beyond this sidewalk is a ravine approximately fifteen (15) feet deep. These highways are of surface-treated type, being constructed of black asphalt and crushed stone. Highway Number 525 is evenly divided by a solid white painted center line, and each of the halves is, in turn, subdivided in two by broken white lines. Four hundred ten (410) feet south of the intersection of said highways and twenty-five (25) inches from the eastern boundary of Highway Number 525 there was a junction and route-marker sign apprising travelers using this highway and traveling thereon in a northerly direction that they were about to enter Highway Number 531. At a point thirty-two (32) feet south of Highway Number 531, and twenty-six (26)

inches from the eastern boundary of Highway Number 525, there was a stop sign. On the grass plot immediately to the north of Highway Number 531, and opposite the point where Highway Number 525 entered, were route-marker signs showing the direction of the highways under discussion, all of which signs were regulation signs as to size, etc.; and in addition thereto, there was a large sign on this grass plot indicating the direction of the Charleston Port of Embarkation.

At the time of the accident, the signs above mentioned were not illuminated, but there is no allegation in the complaint as to this constituting negligence on the part of the appellant.

The specifications of negligence allowed to remain in the complaint are as follows:

"(a) In causing and allowing the said ravine to be and remain at the junction of said two highways.

"(b) In failing and omitting to erect proper signs and other devices around and about said ravine to warn motorists traveling along Highway 525 of the presence and danger thereof.

"(c) In failing to erect a sufficient guard rail beside said ravine.

"(d) In failing to have proper and sufficient signs around said ravine at the time of the injury and death of plaintiff's intestate to warn motorists on said highway of the existence and location and the extremely dangerous character of the said ravine.

"(e) In failing and omitting to erect and maintain a suitable barricade to warn motorists using said highway 525 of the presence of said ravine at the intersection of the two highways.

"(f) In failing and omitting to have reflector lights or other lights warning travellers approaching the intersection

of said two highways of the presence of said dangerous ravine.

"(g) In failing and omitting after notice of the dangerous character of said ravine to erect suitable and proper barriers, barricades and other precaution for the protection of motorists lawfully using said intersection.

"(h) In failing and omitting properly to make (mark?) said highway to warn the travelling public of the presence of said ravine at said intersection of two heavily travelled highways.

"(i) In causing and allowing said ravine to remain at and beside said intersection of two heavily travelled highways and in close proximity thereto, unmarked and unlighted.

"(j) In failing and omitting to take any precautions whatsoever to protect travellers lawfully using said heavily travelled intersection.

"(k) In causing and allowing a dangerous situation to exist at and beside said intersection of two heavily travelled highways to users thereof in the nighttime by reason of the presence of said unlighted, unmarked and unprotected ravine.

"(l) In causing the death of plaintiff's intestate as hereinabove set forth."

Upon the trial of the case, the appellant made timely motions for a nonsuit and for a directed verdict in its behalf, which motions were refused. The case was then submitted to the jury, resulting in a verdict for the respondent.

The appellant in its printed brief, in stating the "Questions Involved" having reference to these motions, propounds the question: "Does the evidence, in these cases, present sufficient proof of actionable negligence to have required the submission of the cases to the jury for its determination?" And in its printed and oral argument the po-

sition is taken that the sole proximate cause of the accident resulting in the death of two of the occupants of the automobile involved, and injury to the other occupants thereof, even if evidence of negligence on the part of the appellant be conceded, was the negligence of the driver of the car.

To pass upon this issue, it is necessary that we discuss the testimony offered on behalf of the respondent. The testimony for the appellant is in the main contradictory of that of the respondent, as to material matters. However, it is admitted by the appellant that it did not have reflectors or barriers at the ravine.

The testimony on behalf of the respondent is in effect, briefly summarized, as follows: On the night of November 28, 1943, about midnight, or early in the morning of November 29, 1943, a heavy automobile (Studebaker, Commander, four-door sedan) owned and driven by a Mr. Danielson, the other occupants of the car at the time of the accident being Oscar J. Preveaux, an unidentified soldier, a Mr. Alexander, and Harold E. Epps, was being driven north on Highway Number 525; that the night was very foggy, especially in the vicinity of the intersection of the highways herein mentioned, there was a heavy mist which had the pavement damp or wet, and there was considerable smoke also; that the visibility was very poor, and to such an extent that Danielson (the driver of the car) switched his lights from bright to dim so as to see the road, and reduced the speed of the car to not over twenty-five (25) miles per hour, and that the lights would not penetrate the fog, smoke and mist for more than fifteen or twenty feet; that Danielson drove the car adjacent to the heavy white line in the center of the highway and therefore the head-lights did not show the road signs erected by the appellant on the edge of the highway to the traveler's right; that the first that they knew of any danger was when about halfway across Highway Number 531 they saw the outline of the tops of trees in front of them (these were the trees growing on the brink of the ravine); that the brakes, which were good, were applied about mid-

way Highway Number 531, as shown by skid marks on the northern half of said highway, but when the automobile hit the six-inch curb to the north of the driveway of the highway, it vaulted the grass plot thirteen (13) feet wide, and the sidewalk six (6) feet wide, and landed in the ravine to the north thereof; that neither the grass plot nor the sidewalk showed any evidence of the wheels of the car coming in contact with same. The left side of the automobile came in contact with a tree or trees growing on the edge of the ravine, mashing that side of the car in and killing the occupants of the car sitting on that side.

■ The question under discussion has to be determined by the facts, which must be considered in the light most favorable to the respondent.

Section 1616 of the Code of 1942 provides: "No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing"..

· ■■ The appellant (The Highway Department) is not an insurer of the safety of travelers over the highways of the State, and its duty is performed when it keeps the highways in a reasonably safe condition for travel, and erects and maintains sufficient signs, guard rails and warnings as may enable users of said highways, exercising ordinary care and prudence, to avoid injury to themselves and others. "Mark you, there is imposed upon those using the highways the duty to exercise ordinary care and prudence to avoid injury to themselves and others". *Cooper v. South Carolina Highway Department,* 183 S. C., 155, 190 S. E., 499.

■ A reference to the specifications of negligence with which the appellant is charged (hereinbefore set out in full) will show that they merely charge the appellant with having failed to erect sufficient warning signals or devices, which would have warned the traveling public that at least nineteen feet to the north of the vehicular path of Highway Number 531, at a point where Highway Number 525 entered,

there was a ravine. Even if this were so, in order for the respondent to recover, he must show, not only that this constituted negligence on the part of the appellant, but that such negligence was the proximate cause of the accident.

██ According to the evidence of the respondent, the driver of the car in which respondent was riding elected to drive it near the center of Highway Number 525 and was thereby prevented from being able to see the signs erected on the edge of the driveway to the right in the direction in which the car was driven, as these signs are customarily placed, and was thus deprived of the warnings, and therefore did not stop the car before entering upon Highway Number 531. If the car had been stopped prior to entering said last mentioned highway, the accident would not have occurred. But the respondent contends that due to the fog, smoke and mist, even if the car had been driven to the extreme right of the highway, the headlights would not have shown these signs because it was necessary to use the dimmers in order to throw the light on the ground, and that the lights would not penetrate the fog, etc., more than fifteen or twenty feet, and yet the car was driven at a speed of about twenty-five miles per hour. If the lights from the car would not penetrate the fog, smoke and mist for more than fifteen or twenty feet, we do not know of any reflector or other sign that would have given notice of the ravine at least nineteen feet beyond the northern curb of Highway Number 531, and which would have prevented the accident. The visibility being only fifteen to twenty feet, it was negligence as a matter of law, in the light of the other facts and circumstances of this case, for the car to be operated at a speed greater than that in which it could be stopped within such distance.

When the testimony on behalf of the respondent is analyzed, it seems to us that it conclusively shows that except for the fact that the driver of the car did not use ordinary care and prudence to avoid injury to himself and the other occupants thereof, the accident would not have occurred; and that his negligence was the sole proximate cause of the ac-

cident. We also feel impelled to make the observation that it is incredulous that an automobile being driven at a speed of from twenty to twenty-five miles per hour, in hitting a six-inch curb, would vault nineteen feet.

For the reason above stated, the judgment of the lower Court is reversed, and the case is remanded to that Court, with direction to enter judgment for the appellant.

MESSRS. ASSOCIATE JUSTICES FISHBURNE, TAYLOR and OXNER concur. MR. ASSOCIATE JUSTICE STUKES concurs in result.

MR. ASSOCIATE JUSTICE STUKES:

The question of whether it is negligence as a matter of law under all circumstances for the operator of an automobile to drive it at night at such rate of speed that he cannot stop within the limit of his vision ahead is one that has given the Courts of other jurisdictions considerable difficulty and upon which the authorities are divided. 58 A. L. R., 1493. We have not had occasion heretofore to pass upon the question and I do not understand that we are doing so now. So interpreting the opinion of the Chief Justice, I concur. From the evidence in the case, the only reasonable inference is that the car was being driven at a very excessive rate of speed.

MR. ASSOCIATE JUSTICE OXNER concurs.