## MUNSON *v.* VANE-STECKER COMPANY.

1. WORKMEN'S COMPENSATION—ACCEPTANCE OF BENEFITS—THIRD-PARTY TORT-FEASOR—ELECTION OF REMEDIES.

   Amendment of the workmen's compensation act, enabling an injured employee, his dependents or personal representatives to bring action to enforce liability of a third party claimed to be liable for damages notwithstanding the prior acceptance of compensation benefits or bringing of proceedings under the compensation act, is essentially remedial in character and is given a retroactive effect (CL 1948, § 413.15, as amended by PA 1952, No 155).

2. STATUTES—AMENDMENT—LIMITATION ON PROCEDURAL DEFENSE—PENDING ACTION.

   An amendment of a statute that does not create a new right of action but merely limits a procedural defense applies to an action pending at the time the amendment is adopted, hence,

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Workmen's Compensation § 60 *et seq.*
[2] 50 Am Jur, Statutes §§ 468, 469, 482.
[3, 4] 38 Am Jur, Negligence §§ 98, 99.
[3, 6, 8] 38 Am Jur, Negligence §§ 24, 87.
[5] 38 Am Jur, Negligence § 344 *et seq.*
[7] 38 Am Jur, Negligence § 11 *et seq.*
[8, 10, 11] 38 Am Jur, Negligence § 174 *et seq.*
[9] 38 Am Jur, Negligence § 23.
[11] 38 Am Jur, Negligence §§ 335, 336.

motions to dismiss, based on the statute as previously existing and as of the time the cause of action arose, were not well-founded (CL 1948, § 413.15, as amended by PA 1952, No 155).

3. NEGLIGENCE—CONSTRUCTION OF BUILDING—USE OF ERECTED SCAFFOLDING—IMPLIED INVITATION—INSPECTION.

There is an implied invitation by the owner or lessee of scaffolding erected by such party as a subcontractor in the construction of a building in which other subcontractors are also at times participating in construction that employees of the other subcontractors may use the scaffolding, hence, since there is a common interest or mutual advantage in not having to dismantle erected scaffolding and erect another for respective users, the party for whom it was originally erected is under duty to inspect to see that a proper erection is made.

4. SAME—INVITEES—SCAFFOLDING—CUSTOMS AND USAGES.

Plaintiff, an employee of steel erection subcontractor, *held*, an invitee of defendant bricklaying subcontractor so far as use of scaffolding latter had had erected at construction job by virtue of a custom of the trade and arising from a mutual interest in the undelayed progress of the construction in which both subcontractors were participants.

5. SAME—SCAFFOLDING—INVITEES—REASONABILITY OF USE A QUESTION FOR JURY.

Plaintiff steelworker, employee of steel erection subcontractor who was participating in construction of building in which defendant bricklaying subcontractor was also a participant and for whom a scaffolding had been erected, was entitled as invitee of the latter to make a reasonable use of the scaffolding and where accidental injury to plaintiff would not have occurred but for such defendant's failure to inspect construction of the scaffolding, it was a jury question as to whether plaintiff, in climbing by use of the framework instead of on the ladder thereon, made a reasonable use of it.

6. SAME — GENERAL CONTRACTOR — SUBCONTRACTOR'S SCAFFOLDING — INSPECTION.

Defendant general contractor, engaged in the construction of a building at which scaffolding had been erected for use of bricklaying subcontractor, was entitled to assume that those charged with the duty of inspecting the erection of such scaffolding had properly observed such duty, since the general contractor was not in position to inspect it, hence, was not guilty of actionable negligence for the failure to inspect which

resulted in injury to plaintiff, an employee of steel-erection subcontractor.

**7.** SAME—LEGAL DUTY.

There can be no actionable negligence where there is no legal duty.

**8.** SAME—STEELWORKER—CONTRIBUTORY NEGLIGENCE—INSPECTION OF BRICKLAYER'S SCAFFOLDING.

The matter of plaintiff steelworker's contributory negligence was a question for the jury in action for injuries he sustained when using scaffolding that had been erected for defendant bricklaying subcontractor without proper inspection by latter, where it is argued that if the defect was a patent one, it should have been discovered by plaintiff when he was climbing the scaffolding, since plaintiff, as an invitee, was entitled to assume that due care had been used in the erection of the equipment and proper inspection made.

**9.** SAME—APPREHENSION OF DANGER.

One is not guilty of negligence as a matter of law because of failure to apprehend danger in the absence of a reason for so doing.

**10.** SAME — STEELWORKER — USE OF BRICKLAYER'S SCAFFOLDING — CLIMBING UP FRAMEWORK RATHER THAN LADDER—CONTRIBUTORY NEGLIGENCE.

Steelworker who customarily climbed among framework of scaffolding at construction jobs was not guilty of contributory negligence as a matter of law in so doing instead of using ladders on scaffolding erected for bricklaying subcontractor at the same job.

**11.** SAME—VERDICTS—STEELWORKERS—BRICKLAYER'S SCAFFOLDING—CONTRIBUTORY NEGLIGENCE—EVIDENCE.

Finding of jury that steelworker, who climbed among framework of scaffolding at construction job, that had been erected for defendant bricklaying subcontractor, was not guilty of contributory negligence in so doing rather than using ladders thereon *held,* supported by the record.

Appeal from Wayne; Webster (Arthur), J. Submitted October 4, 1956. (Docket No. 46, Calendar No. 46,970.) Decided December 28, 1956.

Case by Earl Munson against Vane-Stecker Company, Safeway Steel Scaffold, Inc., and Etkin Con-

struction Company, all Michigan corporations, for damages, beyond workmen's compensation payments, sustained in fall while on construction work. Dismissed as to defendant Safeway Steel Scaffold, Inc. Judgment *non obstante veredicto* for defendants Vane-Stecker Company, bricklaying subcontractor, and Etkin Construction Company, general contractor. Plaintiff appeals. Affirmed as to defendant Etkin Construction Company. Reversed and remanded as to defendant Vane-Stecker Company.

*Hugh K. Davidson, Joseph A. Lang,* and *Fred Nicholson,* for plaintiff.

*Cary & BeGole,* for defendant Vane-Stecker Company.

*Crawford, Sweeny, Dodd & Kerr,* for defendant Etkin Construction Company.

CARR, J. This is an action for damages resulting from an accident occurring on November 3, 1950. While engaged in erecting steel on a building being constructed for the Dearborn Furniture Company, in Dearborn, Michigan, plaintiff, while endeavoring to climb scaffolding, fell and sustained serious injuries. He was at the time in the employ of the Acorn Iron Works as a foreman of steelworkers, and the employer was subject to the provisions of the workmen's compensation act of the State. Plaintiff's hospital and medical expenses were paid in accordance with the provisions of the statute, and he received compensation for his disability. On or about August 1, 1952, plaintiff sought and obtained permission from the compensation commission to settle with his employer and its insurer for a lump-sum payment. The total amount of all payments

made under the compensation act was approximately $8,500. Following the settlement, and under date of August 25, 1952, the present suit for damages was instituted, the defendants being charged with negligence because of failure to properly inspect and repair the scaffolding.

The declaration in the case alleged that in the construction of the building for the Dearborn Furniture Company the Etkin Construction Company was the general contractor, and the Vane-Stecker Company and the Acorn Iron Works were subcontractors on the project. The Safeway Steel Scaffold, Inc., was joined as a party defendant with Etkin and Vane-Stecker, it being claimed in the pleading that Safeway was the owner of the scaffolding from which plaintiff fell. At the conclusion of the proofs on the trial in circuit court the case was dismissed as to Safeway. Motions made by the other defendants for directed verdicts in their favor were taken under advisement by the trial court. The jury returned a verdict for plaintiff, and thereupon defendants Vane-Stecker and Etkin each moved for judgment in its favor notwithstanding said verdict. These motions were granted, and plaintiff has appealed.

Prior to the impaneling of the jury counsel for defendants joined in a motion to dismiss on the ground that plaintiff, at the time he started his action on August 25, 1952, was not entitled to seek damages from defendants because of his election to take compensation from his employer under the workmen's compensation act. The trial court did not determine the issue, granting the motions for judgments notwithstanding the verdict on other grounds. Appellees now claim that the action taken may properly be sustained on the theory that the case was prematurely brought.

At the time plaintiff filed his declaration as commencement of suit on August 25, 1952, a provision of the workmen's compensation law granted to an employee sustaining an injury in the course of and arising out of his employment the option to proceed with his claim for compensation or bring an action at law against a third party against whom legal liability existed because of the injury and resultant disability. The employee could not, however, pursue both remedies. Such provision (CL 1948, § 413.15 [Stat Ann 1950 Rev § 17.189]) was amended by PA 1952, No 155 (CLS 1952, § 413.15 [Stat Ann 1953 Cum Supp § 17.189]), which became effective on September 18, 1952, and which materially changed the prior statute, providing, in substance, that the acceptance of compensation benefits or the bringing of proceedings under the compensation act should not constitute an election of remedies, but that the injured employee, his dependents, or personal representatives may bring action to enforce the liability of a third party claimed to be liable for damages. The validity and application of this amendment were considered and determined in *Rookledge* v. *Garwood,* 340 Mich 444, where it was held that said amendment was essentially remedial in character and should, as such, be given a retroactive effect.

In *Rookledge* v. *Garwood* the amendment of 1952, above cited, was in effect at the time the action for damages was instituted against defendant. In the opinion, however (p 458), reference was made to the decision of the circuit court of appeals of the 6th circuit in *Foster* v. *Buckner,* 203 F2d 527, 531. The following excerpt from the opinion indicates the view of that court with reference to the specific question here at issue. After discussing other questions involved in the proceeding, it was said:

"A further conclusive answer to this contention is that the Michigan statute which was construed in the *Dinardo Case* [*Dinardo* v. *Consumers Power Co.* (CCA), 181 F'2d 104] has now been changed. An amendment was enacted to CL 1948, § 413.15 (Stat Ann 1950 Rev § 17.189), in 1952, PA 1952, No 155, after the instant action was commenced but while it was pending. The former statute required an employee to elect whether to pursue his remedy against the employer for compensation or to seek his common-law remedy against the third party causing the injury. Under the present statute the employee may receive compensation or take proceedings to enforce compensation payments and, also, sue the third party. The statute provides in substance, that in case of recovery against the third party, after deducting expenses of recovery, the amount of the judgment is to be used first to reimburse the employer or the workmen's compensation insurance carrier for amounts paid or payable under the compensation act to date of recovery and the balance is paid to the insured employee or his dependents. This statute pertains to the remedy and, hence, applies to the present action. *Judd* v. *Judd,* 125 Mich 228; *Heineman* v. *Schloss,* 83 Mich 153; *Nash* v. *Robinson,* 226 Mich 146; *Detroit Club* v. *State of Michigan,* 309 Mich 721; *Stott* v. *Stott Realty Company,* 288 Mich 35. Since the change in the statute created no new cause of action and the amendment merely limited a procedural defense, the amended statute governs this controversy. The *Dinardo Case, supra,* does not apply and the claimed issue does not arise."

In the instant case the prosecution of plaintiff's alleged cause of action against defendants was, at the time suit was brought, subject to the statutory provision then in effect, pursuant to which he was bound by his election to take compensation from his employer. However, the workmen's compensation act did not undertake to abolish such cause of action but, on the contrary, expressly recognized it. The

pertinent statutory provision merely raised a bar to its prosecution, based on the election to take advantage of the statutory remedy. The amendment of 1952 removed that barrier. It does not appear that the question was raised in the trial court by any of the defendants until after the effective date of the amendment on September 18, 1952. The inhibition imposed on plaintiff was procedural in character, and, having been removed by act of the legislature, the motions to dismiss made on behalf of defendants were not well-founded.

Plaintiff's case against Vane-Stecker Company and Etkin Construction Company rests on the claim that the scaffolding from which he fell had been defectively constructed or repaired, that each of said defendants owed a duty to plaintiff to inspect the equipment, and that each had failed to perform that duty. Whether Vane-Stecker owned the scaffolding or had rented it from Safeway does not clearly appear from the proofs. However, it is not disputed that it had been used by Vane-Stecker, was in its possession and subject to its control, and that the employees of said defendant had erected it in connection with the work on the Dearborn Furniture Company building. It further appears that Vane-Stecker, which was the subcontractor for the masonry and bricklaying, had reached a point beyond which it could not properly proceed until further iron and steel work was performed. This was the function of Acorn, plaintiff's employer.

Evidence was introduced on the trial indicating that Etkin's superintendent called the vice-president of Acorn by telephone on the day before plaintiff's accident occurred, advising and requesting that the latter company proceed with the steel work. The general tenor of the conversation is indicated by the following excerpt from the testimony of Acorn's vice-president as given on the trial:

"I was called by Mr. Heldt of the Etkin Construction Company the day before the accident and in the course of the conversation he told me that the other work being performed by other contractors had progressed to the point where it was desirable for me to go ahead with the steel work. I don't recall now what prompted him to urge me to come out the next morning. It was desirable that we have scaffolding there for the purpose of getting our steel in place where it could be properly erected, and in this particular case, Mr. Heldt advised me that scaffolding was already in place.

"*Q.* Did he tell you whose scaffolding it was?

"*A.* I don't recall him telling me that but it was mentioned to me on the job that the bricklayers had something to do with it, that they had erected it."

Pursuant to the conversation above referred to, plaintiff and 3 other employees of Acorn were sent to the project the following morning, plaintiff being the foreman in charge. The scaffolding erected and used by Vane-Stecker's employees was in place, and the steelworkers proceeded to use it in connection with their work. It was claimed on the trial that one of the men, because of the swinging of a bar of iron or steel, was placed in a precarious situation and that plaintiff, who was at the base of the scaffolding, proceeded to climb the scaffolding to render assistance. In doing so he took hold of a rod, brace, or strut which gave way and caused him to fall. Testimony was offered on the trial indicating that said part of the scaffolding had been properly welded in place on one end but that an attempt had been made to secure the other end by a so-called "spot" or "tack" weld rather than by a complete and proper weld. It is insisted on behalf of plaintiff that because of this situation the equipment was defective, and that a reasonably careful inspection would have revealed that fact. On behalf of plaintiff, testimony

was introduced in support of his claim that in the erecting of the scaffolding by Vane-Stecker's employees the spot or tack weld might and should have been discovered. It is insisted that proper inspection would have revealed it. There is also testimony in the record indicating that such method of securing a brace or strut is improper.

On behalf of defendant appellees it is argued that the employees of Acorn, including the plaintiff, were at most merely licensees to whom no duty of inspection was owing. On behalf of plaintiff it is contended that he had the legal status of an invitee. It is claimed that in the building industry there is a recognized custom, based on a certain mutuality of interests in the prosecution of such work, in accordance with which equipment erected by a contractor or subcontractor and left in position for use by others may be so used. Testimony was offered on the trial in support of such claim. The record in the instant case established that Vane-Stecker had further masonry and brick work to do after the erection of the steel by Acorn. In other words, said defendant had not completed its portion of the work. It might have removed its scaffolding, but it did not do so. It is a fair inference that it wished to to avoid additional and unnecessary work and, in consequence, left its scaffolding on the job and in such a position that it was available for use by plaintiff and his fellow workmen. The president of Vane-Stecker was called as a witness in the case, and indicated the situation from the standpoint of his corporation as follows:

"*Q.* Did you have any brick work to do on this building after the steel was completed?

"*A.* We did.

"*Q.* You want to tell us that you wanted your scaffolding taken down?

"*A.* No, I don't want it taken down.

"*Q.* It was already then for your scaffolding to be left up, is that right?

"*A.* We still had to use it.

"*Q.* You knew that you had to use it at a later date, didn't you?

"*A.* That is correct.

"*Q.* You didn't expect it to be taken down?

"*A.* That is correct.

"*Q.* You also knew that the steelworkers would have to work where the mason work was not completed?

"*A.* Yes, they had to work, yes."

Etkin's superintendent, in testifying on cross-examination, made the following significant statement:

"In the construction game it is taken for granted that it would be useless for every organization to put up a separate scaffold. Everyone who needs to use one uses the one already put up."

A situation somewhat analogous to that in the case at bar was involved in *Meny* v. *Carlson,* 6 NJ 82 (77 A2d 245, 22 ALR2d 1160). In discussing the situation, it was there said (p 89):

"There was testimony that in construction work, of the nature here involved, cooperation among the various trades is customary. In support of such a prevailing custom, the evidence discloses that certain cleat boards were nailed to wooden beams on the roof by the carpenters, employees of this defendant, and were left there by the carpenters, upon completion of their work, for use by the roofers, of which the plaintiff was one, in the performance of their work. It is observed that the scaffolding was erected on the side of the building and provided a means for the plaintiff to reach the roof and make use of the cleat boards which were left there by the carpenters for the plaintiff's use and benefit. These facts are suggestive of an implied invitation by this

defendant for the plaintiff to use the scaffolding as a necessary incident to the performance of his work. This is particularly true since it would be unrealistic in a project of this nature, where the work of the mechanics is overlapping, for each subcontractor to erect scaffolding solely for his own use so that several sets of scaffolding would be required to be erected for work on the same building."

The supreme court of the United States in *Bennett* v. *Railroad Company,* 102 US 577 (26 L ed 235), in discussing whether plaintiff was a licensee or an invitee, inferentially approved the common interest or mutual advantage test. It was there said (pp 584, 585):

"It is sometimes difficult to determine whether the circumstances make a case of invitation, in the technical sense of that word, as used in a large number of adjudged cases, or only a case of mere license. 'The principle,' says Mr. Campbell, in his treatise on Negligence, 'appears to be that invitation is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is the mere pleasure or benefit of the person using it.'"

In *Arthur* v. *Standard Engineering Co.,* 89 App DC 399 (193 F2d 903, 32 ALR2d 408), the court recognized the existence of the mutual benefit test but held it inapplicable under the facts. The following excerpt from the opinion indicates the conclusion reached (p 403) with reference to the issue of fact:

"There was no evidence tending to show that the Standard Engineering Company had any interest in, or derived any benefit or advantage from, the work done by Arthur and the other Foley employees as they stood on the scaffold. So, under the mutual benefit test, Arthur was not an invitee. It was proved, however, that the steamfitters had used the electricians' ladders, from which it is argued that

Standard Engineering gave the use of the scaffold as a *quid pro quo* for its use of the ladders, and in that fashion derived benefit from Arthur's presence on the plank.

"The argument pushes the mutual benefit theory too far, we think.  Reciprocal use of different pieces of equipment simply shows the custom in operation. From it, consent by each subcontractor to the use of its equipment by other subcontractors may be implied, just as it may be implied from proof of the custom alone in cases where there was no actual reciprocal use or no express consent.

"The true test under the mutual advantage theory is whether the owner of a scaffold or other appliance receives benefit or advantage from the permitted use by another of that particular piece of equipment.  If so, the user is an invitee; if not, he is a licensee."

In the case at bar there is testimony to support the conclusion, apparently reached by the jury in the determination of its verdict, that both Acorn and Vane-Stecker benefited by the leaving of the scaffolding in position for use by the steelworkers.  Said defendant was spared the necessity of taking down the scaffolding and removing it, and then of re-erecting it in order to carry on its portion of the project. Presumably also it was to its advantage to have the construction proceed without delay.  Doubtless the rule that plaintiff contends should be applied in the case at bar has resulted, in part at least, from mutual interests of contractors and subcontractors in instances where the facts are of the character here involved.  See, also, *Quigley* v. *Thatcher,* 207 NY 66 (100 NE 596); *McGlone* v. *William Angus, Inc.,* 248 NY 197 (161 NE 469).  The test to be applied in a case of this character in determining whether a plaintiff was a licensee or an invitee is whether there existed mutual interests and mutual advantages to the parties concerned from the use of the equipment

belonging to one party and left for use by another in the carrying on of a project in which both were interested. Generally speaking, this is an issue of fact and there is sufficient testimony in the record to support a finding that the plaintiff here was, insofar as defendant Vane-Stecker is concerned, an invitee with the incident rights and duties recognized in *Nezworski* v. *Mazanec*, 301 Mich 43, and other decisions of this Court of like character. Included in such duties owing by Vane-Stecker was that of reasonable and proper inspection of the scaffolding at the time it was erected. There is proof in the record to support the finding by the jury that such duty was not observed, and that the injuries to plaintiff followed proximately from such breach of duty.

It is argued further that plaintiff made an improper use of the scaffolding, that it was not designed for climbing by use of the framework, and that, in consequence, the invitation to Acorn's employees was not sufficient to embrace the use attempted by Munson. It is the claim of the plaintiff, supported by uncontradicted proofs, that steelworkers customarily climb scaffolding in the manner employed by him. Testimony was offered also that such method is as safe, or safer, than is the use of a ladder. It appears that a representative of Vane-Stecker was on the premises at the time of the accident, and raised no question as to the manner of ascent employed by plaintiff. It is a fair inference from all the proofs that the accident would not have occurred except for the defect in the construction or repair of the scaffolding.

The fact that the bricklayers did not use the appliance in accordance with the practice followed by steelworkers is not controlling. When the scaffolding was left in position carrying with it the implied invitation to steelworkers to employ it in the furtherance of the work of construction, they were en-

titled to make a reasonable use of it. Whether plaintiff did so in the case at bar is, under the proofs, a question of fact which the jury, it may be assumed, determined in plaintiff's favor. The situation here is not analogous to that presented in *Pettyjohn & Sons* v. *Basham,* 126 Va 72 (100 SE 813, 38 ALR 391). On the record here before us plaintiff was entitled to have his right to recover damages from Vane-Stecker submitted to the jury, and to judgment on the verdict rendered.

This brings us to a consideration of the case insofar as it concerns the defendant Etkin Construction Company. That it stands in a different position than does Vane-Stecker is obvious. It did not own the scaffolding in question nor was it the lessee thereof. It was the general contractor and as such had the right to supervise the manner in which the work was done, and presumably was interested in completion of the project within a reasonable time. However, over the equipment of the subcontractors it was not in position to exercise control, nor did the duty of inspection rest on it for the protection of others who might use it at the implied invitation of the owner or lessee. Its superintendent as a routine matter notified the subcontractor for the iron and steelwork that the building was ready for it to proceed and called attention to the fact that scaffolding was on the ground and available for use. It is a fair inference that in making such statements the superintendent had in mind the custom that existed in the building industry and on which plaintiff here relies. It must have been a matter of general knowledge on the part of those working on the project that Vane-Stecker had left the scaffolding in position, and that under the custom the steelworkers were entitled to use it.

The scaffolding was not erected by Etkin. It was not, in consequence, in position to inspect it in con-

nection with that process. It was entitled to assume that those charged with the duty of inspection had properly observed such duty. Under the circumstances no obligation rested on it, for the benefit of plaintiff, to send its own employees on the scaffolding after it had been erected by Vane-Stecker in order to insure that the employees of the latter had exercised due care. In the absence of such duty it may not be said that Etkin was guilty of actionable negligence.

In *Butrick* v. *Snyder*, 236 Mich 300, 306, it was recognized that:

"This Court is committed to the doctrine that where there is no legal duty there can be no actionable negligence."

See, also, *LeDuc* v. *Detroit Edison Co.*, 254 Mich 86; 38 Am Jur, Negligence, § 12, p 654; *Gable* v. *Kriege*, 221 Iowa 852 (267 NW 86, 105 ALR 539). Under the proofs in the case there was no basis for the apparent finding of the jury that Etkin violated any duty that it owed to plaintiff. It was, as before noted, without authority to exercise control over the scaffolding. There is no plausible basis for a claim that it held itself out to Acorn, or to the plaintiff, as having a right of control, nor is it claimed that plaintiff or his employer relied on any such pretension. As to said defendant, the verdict of the jury was not supported by the proofs, and judgment in its favor was properly entered on the motion therefor.

It is contended on behalf of each defendant here that, if it was guilty of negligence as claimed, plaintiff is precluded from recovering because guilty of contributory negligence as a matter of law. The argument is advanced that if the defect was a patent one it should have been discovered by plaintiff when he was climbing the scaffolding. We are not in ac-

cord with such argument. Plaintiff had no reason to assume that the scaffolding was not properly constructed, or that any brace or strut had been welded improperly. He was entitled to assume that in the erecting of the equipment due care had been observed and proper inspection made. Under the proofs the matter of contributory negligence was for the jury to determine.

In *Mayala* v. *Underwood Veneer Co.*, 281 Mich 434, the action was brought to recover damages for personal injuries sustained by plaintiff while loading logs. Defendant contended that plaintiff had failed to exercise proper care for his own safety and was guilty of contributory negligence as a matter of law. In view of the contention in the case at bar that plaintiff at the time of his injury was using the scaffolding in an improper manner, the following comment by the Court in the case cited (pp 438, 439) is of interest:

"The act of plaintiff in going under the log before the pup had been released seems dangerous and bordered closely upon contributory negligence. But acts which look dangerous when viewed in retrospect, and especially by those not wholly familiar with the conditions of the work, nevertheless may be ordinary incidents of operation. The court must rely upon the testimony of those familiar with such matters to find the test of whether an act is ordinary practice or a matter of negligence. In view of the testimony as to the duty of a hooker to release the pup, of the jammer man not to move the log after it had been placed on the truck, the right of plaintiff to rely upon the others to perform their duty and the general practice in such cases, we cannot say that plaintiff was guilty of negligence as a matter of law, nor, indeed, that the finding of the court was against the preponderance of the evidence."

In the case at bar plaintiff was not guilty of negligence as a matter of law because of failure to appre-

hend danger in the absence of a reason for so doing. *Engel* v. *Smith,* 82 Mich 1 (21 Am St Rep 549); *Hulett* v. *Great Atlantic & Pacific Tea Co.,* 299 Mich 59; *Nezworski* v. *Mazanec, supra; Grover* v. *Simons,* 342 Mich 480. The jury determined the factual issue in his favor, and such finding is supported by the record.

For the reasons stated, the judgment entered by the trial court is affirmed as to Etkin Construction Company and reversed as to Vane-Stecker. The cause is remanded with directions to set aside the said judgment as to the last-named defendant and to enter judgment against it in accordance with the verdict of the jury.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, KELLY, and BLACK, JJ., concurred.

BOYLES, J., did not sit.