EDDY, APPELLANT, *v.* JOHN J. BRADY PLASTERING CO., APPELLEE.*

(No. 4887—Decided November 18, 1959.)

*Messrs. Redmond, Ugan & Quandt,* for appellant.

*Messrs. Slabaugh, Walker, Pflueger, Roderick & Myers,* for appellee.

HUNSICKER, J. On November 3, 1955, Joseph Eddy, the appellant, who was employed by Orton Heating Company, went to Midway Shopping Center on Tallmadge and Brittain Roads, Akron, Ohio, which was then in process of construction. The purpose of this trip was to install the heating ducts in one of the storerooms. A fellow-employee of Orton Heating Company was also assigned to this work.

Prior to Eddy arriving at the shopping center, the material

---

*Motion to certify the record overruled, May 11, 1960.

to install the heating ducts was placed in the room where the work was to be done. A scaffolding was necessary to do the work, and Orton Heating Company had one in the shopping center, although not in the room where Eddy and his fellow-employee were to do their work.

In the storeroom where the work was to be done, a large scaffold was already erected which belonged to the appellee, John J. Brady Plastering Company. Neither Eddy nor his fellow-employee looked for the Orton scaffold, and they did not ask permission of the Brady Company to use their scaffold. They did not know to whom it belonged. Eddy and his fellow-employee began to move it into position for use by them in putting the heating ducts in place. They first moved it to the rear of the room, then to the front.

Brady needed the scaffold to complete the plastering after other tradesmen had finished their work. It required three men, two hours, to dismantle, and two hours to erect, this scaffold. The Orton Heating scaffold commonly used on similar jobs was 30 inches to 3 feet wide, and about 6 feet long. The Brady scaffold was 16 feet wide and 22 feet long.

The room where the work was to be done was 22 feet wide and 95 feet long. The heating duct was to be located 5 feet 10 inches left of the right wall, and along the ceiling. It required a minimum of 2 feet on each side of this duct for Eddy and his fellow-employee to install it.

Testimony was given by various tradesmen that it was the custom of artisans to use another tradesman's scaffold, whenever it was needed, without asking for permission to do so.

When the scaffold was moved, neither Eddy nor his fellow-employee examined the scaffold to see what condition it was in, other than to see that it ''had wheels on it,'' and ''planks on it.'' Eddy had never worked with a scaffold as large as the Brady scaffold.

Eddy got between the outer braces and began to push on one of the braces, his fellow-employee helped by pulling on another brace, and, while moving it to the front of the store, a wheel hit some debris lying on the floor, causing one end to raise off the floor. At this time the scaffold collapsed and fell onto Eddy, causing him severe injuries.

An action to recover damages was filed by Eddy in the Common Pleas Court of Summit County, Ohio, and the trial court, at the conclusion of all the evidence for Eddy, directed a verdict for the John J. Brady Plastering Company. From the judgment rendered on such verdict, an appeal on questions of law has been brought to this court by Eddy, who says the trial court erred to his prejudice in directing such verdict; that the judgment is contrary to law; and that the judgment is against the manifest weight of the evidence.

It requires no recitation of authority to state that, in our examination of the evidence in this case, we must construe such evidence in a light most favorable to the appellant, Eddy. The question which confronts this court is the legal status of Eddy, in his use of the scaffold. Was he an invitee in his use of this device, or was he a licensee?

The cases (to which we have been referred by counsel in their excellent briefs), although not great in number, are pertinent, and point out the theory upon which decisions were rendered in similar cases that have been before the courts in other states and in the federal courts. One line of cases says that there is liability on the basis that the injured employee of a subcontractor who uses a scaffold or device of another subcontractor, who is engaged in the same construction, is an invitee when he uses the device, because of the custom of tradesmen to use such facilities that are on the premises when called to do their part of the work of construction. The other line of cases holds that the workman under the above circumstances is at most a licensee.

The leading case sustaining the rule of no liability on the theory of license is *Arthur* v. *Standard Engineering Co.*, 193 F. (2d), 903, which, along with a complete annotation of the cases, may be found in 32 A. L. R. (2d), 408 *et seq.* That case places great reliance upon the case of *Brauner* v. *Leutz*, 293 Ky., 406, 169 S. W. (2d), 4. These cases adopt the theory that "mutual advantage" must appear and is a necessary ingredient in the use of another's scaffold before liability can arise. Where "mutual advantage" does appear, the workman using another's scaffold is deemed to be an invitee.

The leading case sustaining the rule of liability is *McGlone*

v. *William Angus, Inc.,* 248 N. Y., 197, 161 N. E., 469. The theory advanced in that case is followed in the case of *Munson* v. *Vane-Stecker Co.,* 347 Mich., 377, 79 N. W. (2d), 855. In the *McGlone* v. *William Angus, Inc., case, supra,* the court said: "Negligence is gauged by the ability to anticipate." That case did not discuss the legal status of the injured party in the use of the scaffold erected by another subcontractor.

In the case of *Munson* v. *Vane-Stecker Co., supra,* the court said, at page 389:

"* * * The test to be applied in a case of this character in determining whether a plaintiff was a licensee or an invitee is whether there existed mutual interests and mutual advantages to the parties concerned from the use of the equipment belonging to one party and left for use by another in the carrying on of a project in which both were interested."

There is no case directly in point in Ohio, although in the case of *Lampe* v. *Magoulakis,* 159 Ohio St., 72, the court said:

"1. Ordinarily, one is not liable for injuries resulting from the defective condition of a chattel, which is loaned to another and which is not an inherently dangerous instrumentality, where the one loaning such chattel did not in fact know of the defective condition, whether he ought to have known of it or not, and such one is under no duty to examine the condition of such chattel before lending it."

We are impressed with the logic and reasoning adopted in the case of *Arthur* v. *Standard Engineering Co., supra,* wherein that court approved the following statement contained in a former case heard by that court, saying: "A permission, whether express or implied, is not an invitation to enter or use, and establishes no higher relation than that of a mere licensor and licensee." The court in that case further said:

"The true test under the mutual advantage theory is whether the owner of a scaffold or other appliance receives benefit or advantage from the permitted use by another of that particular piece of equipment. If so, the user is an invitee; if not, he is a licensee."

In the instant case there was no express permission given to use the scaffold belonging to Brady. The right to use in this

matter must then be based upon an implied permission arising out of the custom among tradesmen.

Unless there is, in the case before us, a showing of mutual advantage to the parties—Orton Heating Company and Brady—then Eddy could, at most, only have been a licenseee, and there would then, under the facts here, be no liability on the part of Brady to respond in damages for the injury sustained by Eddy when the scaffold collapsed.

The scaffold was in the front of the store by the front door; its exact location relative to the side of the storeroom is not set out in the record of testimony, but there is testimony that shows that the work of fastening the sheet metal heating duct could have been accomplished for all of the room without interference from the Brady scaffold, except that, on 20 feet of the length of the Brady scaffold, that scaffold would have had to have been moved or, if not moved, dismantled.

We do not believe in this case that we can classify the situation as one of mutual advantage, so as to make Eddy an invitee, to whom Brady owed the duty to use reasonable care to see that the scaffold was so constructed that it would be safe for Eddy to use.

We believe there is another reason why this judgment should be affirmed. The answer alleges, and the evidence introduced by Eddy raises, the inference of contributory negligence on the part of Eddy in moving this scaffold in the manner in which it was moved. Eddy, in the evidence introduced in his behalf, did not dispel or counterbalance the inference he had thus raised. When Eddy helped to move the scaffold, he looked only to see if it had wheels and a platform. He made no further inspection; he had never worked with a scaffold this large, and he had no knowledge as to how it was necessary to fasten them so that moving the scaffold could be done without danger of its collapse. Any simple inspection would have disclosed that this device, which was not then in use, did not have diagonal braces, that the "putlogs" or cross-braces were only placed in the hangers, and that these hangers were not bolted so as to make the "putlog" secure.

The pushing and pulling which Eddy engaged in to move the scaffold in this condition caused these unfastened "putlogs"

to slide out of the hangers. Specifically, this occurred when one of the wheels hit some debris, thus causing some of the scaffold wheels to rise off the floor, and the twist or cant of the device thus released some of these putlogs from these hangers.

We thus conclude from the testimony as given by Eddy himself that he was guilty of contributory negligence as a matter of law, which proximately caused the injuries received by him.

We therefore determine that, on either one of two grounds —to wit, first, that Mr. Eddy was at most a licensee when he sought to use the scaffold, and second, that Mr. Eddy was guilty of contributory negligence as a matter of law, which negligence on his part proximately caused the injuries he sustained—Brady is not liable for the injuries sustained by Eddy when the scaffold collapsed.

It is for these reasons that the judgment must be affirmed.

*Judgment affirmed.*

DOYLE, P. J., and STEVENS, J., concur.