JOHN H. HOLGERSON, Appellant, *v.* SOUTH 45TH STREET GARAGE, INC., Respondent and Third-Party Plaintiff-Appellant. MARCATO ELEVATOR COMPANY, INC., Third-Party Defendant-Respondent.

First Department, April 19, 1962.

*Benjamin H. Siff* of counsel (*Benjamin Goldstein,* attorney), for appellant.

*Lester D. Cook* of counsel (*Paul O. Hastings,* attorney), for South 45th Street Garage, Inc., respondent.

*Frederick Mandel* of counsel (*Bernard Helfenstein*, attorney), for Marcato Elevator Company, Inc., respondent.

BREITEL, J. Plaintiff, an injured elevator maintenance man, appeals from dismissal of his complaint at the close of his evidence by the Trial Justice, upon a jury trial. Plaintiff sued the owner of premises where the elevator was situated. Defendant owner has also appealed from dismissal of its third-party complaint against plaintiff's former employer, an elevator maintenance company.

Since, in this negligence action, the complaint was dismissed at the close of plaintiff's case, only a question of law is raised, namely, as to the sufficiency of plaintiff's case.

The following was developed in plaintiff's case.

The accident occurred January 31, 1958. Since October, 1956 plaintiff's employer had been engaged to service and make periodic inspections of defendant's elevator, a freight elevator used to carry automobiles in defendant's public garage. Prior to the accident, on a number of occasions, plaintiff had worked in and about the elevator and its appurtenances. In time he became familiar with it and familiar with the screens roofing the elevator and the manner in which they were attached. On several visits before the accident he observed that the screens were improperly secured by wire and cord. Plaintiff reported this to defendant's " manager " and to his own employer, but nothing was done to remedy the condition. Plaintiff testified that it was not his duty or that of his employer to make these repairs without a direction from defendant. He had also observed on prior visits that across the screens was a loose plank, six feet long and eight inches wide.

The accident occurred when plaintiff, stepping down from the crosshead of the elevator after having completed his work, placed his foot on the plank, the plank shifted, and he fell through the roof screen. The alleged negligence is the failure to provide properly secured screens as a part of the place to work provided for plaintiff.

It is undisputed that if the screens complied with the standard imposed by the Administrative Code of the City of New York (§ C26–978.0, subd. a), namely, that they be capable of supporting a weight of 150 pounds per four square inches, and were properly secured, plaintiff would not have fallen through the roof of the elevator and sustained injuries. The difficulty with the case turns on the also conceded fact that the primary purpose of the screens was to protect persons in the elevator from falling objects; that plaintiff repeatedly testified that he did not use

the screens as a foothold and avoided such use, but rather used the crosshead of the elevator and the outer frame of the elevator as the route of access to and departure from the overhead equipment; and that plaintiff testified to his awareness of the improper condition of the screens, and had even complained about the condition.

Since it is plaintiff's testimony which is crucial to the issue its exact text is worth examination. Just before the accident plaintiff was on the heavy metal crosshead and he wished to descend. Then, he said: "Well, I was going to get off the elevator and when I was getting off the plank moved so I lost my balance. By so doing I happened to put my foot against the screening and that went down. That's all I know."

In response to a question from the court plaintiff said that the condition of the elevator roof, since more than a year before the accident, had always been the same on his prior visits. On cross-examination he said that the plank had always been there, in the same position generally. The channel irons in which the screens rested were quite thin. He worked from the crosshead, never from the plank. When he needed additional support he used the frame of the elevator. He said, " I used the cross-head. ·I don't depend on the plank." This was said in reference to his method of operation while working. Then he said that he never asked for a longer plank, but more, " I avoided the plank as much as I probably could." He never used the plank " if [he] could help it ". Moreover, he said that on other jobs he used no planks. There were no planks. Evasively he would not quite say that he never used the plank in question. He then added that elevator mechanics generally do not use planks; " we never use planks "; " we avoid planks ".

While, in fairness, the testimony is not clear beyond argument that it related to avoidance of planks while the work was being done, as distinguished from use of the plank for access to or departure from the crosshead, it is conclusive that planks generally are neither used nor necessary; and plaintiff knew enough to avoid their use for any purpose. Indeed, it was just as clear that plaintiff would not use the plank for a foothold as he made it clear that he would not use the roofing screens as a foothold.* At one point, he said, somewhat reluctantly, that he was not sure but that this was the first time he ever used the plank. Later, he spoke of using the plank on other occasions to step down to the frame. With plaintiff's awareness

---

* Screen covers for freight elevators are quite common. The photographs in the case show that the screens in question were of the common kind and they do not suggest a use for a foothold.

and even complaints concerning the disrepair of the screens, his conduct in stepping on the plank lying across the screens, he defeated his case from his own lips.

While plaintiff testified thus as to the use of screens as elevator covers, a former City Supervising Elevator Inspector, Mr. Hochstresser, appearing for plaintiff, testified that it was the custom and usage for screens to be used as a foothold. If the former inspector's testimony may prevail over that of plaintiff himself, which is highly dubious, then an issue of fact survives in the case as to the place to work. In that event, however, plaintiff's case must still fail because of his testimony concerning his knowledge of the condition, and his avoidance of planks even on this job.

Consequently, from plaintiff's testimony and at the close of plaintiff's case, it was evident that the plank and screens were not a part of the place to work, including the ways and approaches, in the sense of providing plaintiff with a foothold. The place to work is a useful but also a flexible concept, defined not only by the place but by the circumstances of the work to be done (*Chaney* v. *New York City Tr. Auth.*, 12 A D 2d 61, 65–66, affd. 10 N Y 2d 871). Even if this case involves the duty to provide a safe place to work under section 200 of the Labor Law, then it was equally evident that plaintiff knew not to use either plank, or screens, or a combination of them as a foothold. He knew this generally, because, as he said, on other jobs planks were not used and one did not use the screens as a foothold; and he knew it especially because of the condition of disrepair of the screens. He said so. Put another way, because the plank and screens were not a place to work for this plaintiff, defendant owner breached no duty toward him; and because plaintiff knew better than anyone else what the condition was and could, and did generally, avoid the hazard, he was inescapably guilty of contributory negligence on his own statements.

Accordingly, the Trial Justice was correct in dismissing the complaint and third-party complaint, as a matter of law, at the close of plaintiff's case, and the judgment should be affirmed, with costs in favor of respondents against appellants.

BASTOW, J. (dissenting). In my opinion the complaint should not have been dismissed at the close of the plaintiff's case. The issues of plaintiff's contributory negligence, if any, and the duty of defendant to furnish him with a safe place to work (Labor Law, § 200) were factual questions that should have been submitted to the jury.

It appeared from the proof that plaintiff's employer had contracted with defendant to service and repair an elevator in premises owned by the latter. The top of the elevator was covered by panels of heavy gauge wire and these panels were set in iron channels or frames around the perimeter of the elevator. The Administrative Code of the City of New York provides that such a cover " shall be sufficiently strong to sustain a load of one hundred fifty pounds applied on any four square inches " (§ C26.978.0). It is conceded that the primary purpose of the cover is to prevent objects from dropping into the elevator but a former Supervising Inspector of elevators in the Department of Buildings testified that it was an accepted custom and practice for such covers " to be used as a working platform in connection with the greasing and minor repairs that have to be made in the shaftway."

On service visits prior to the accident plaintiff observed that the wire screens were not fastened to the frame in the proper manner but were held in place by wire and rope. He also observed a plank some six feet long lying underneath the crosshead that spanned the elevator. Plaintiff complained to defendant's employees about the condition of the panels. On a subsequent visit he was informed that defendant had been informed of the defects and was told to use the plank to stand upon.

It is plaintiff's version that on the day of the accident he worked from the crosshead or the iron frame; that after finishing his work he lowered himself from the crosshead to the plank which moved causing him to lose his balance. He then stepped on a screened panel which gave way and he fell 11 feet to the floor of the elevator.

There is here no disagreement apparently with the principle that the owner occupant of a building has the affirmative obligation of providing a safe place for the work of the employees of an independent contractor properly on the premises. (*Caspersen* v. *La Sala Bros.*, 253 N. Y. 491; *Gasper* v. *Ford Motor Co.*, 11 A D 2d 902, 903; *Gabbamonte* v. *16–20 West 19th St.*, 14 A D 2d 518.) The general rule is recognized that if the risks and danger are obvious and comprehensible through ordinary and reasonable care and inspection there is no duty on a defendant to save the one injured from them. (*McLean* v. *Studebaker Bros. Co.*, 221 N. Y. 475, 479; *Employers Mut. Liab. Ins. Co.* v. *Di Cesare & Monaco Concrete Constr. Corp.*, 9 A D 2d 379, 385.)

But in the instant case the facts do not permit an easy application of this latter principle. Here the triers of the fact might have found that some months before the accident defendant was warned of the dangerous condition and promised to make

repairs. This it failed to do. A code provision mandated a screen sufficiently strong to sustain a weight-bearing load that would have supported with ease this 142-pound plaintiff. Thus upon subsequent visits plaintiff was forced to avoid contact with the screened panels. Thereby he was compelled to perform his work standing on the crosshead or at a lower level by balancing himself on the frames or channel irons which surrounded the screened panels and were two and one-half or three inches wide. The foreseeable happened when a makeshift plank moved causing plaintiff while off balance to step on one of the jerry-rigged screened panels with the resulting fall and injuries.

In the light of these facts it is submitted that it should not be held as a matter of law that defendant had discharged its duty to furnish plaintiff with a safe place to work (*Robinson* v. *Avella*, 10 A D 2d 130, 132; *Gibson* v. *Shanks Constr. Co.*, 10 N Y 2d 840) or that plaintiff was guilty of contributory negligence. (*Kaplan* v. *48th Ave. Corp.*, 267 App. Div. 272; *Pezzo* v. *Paterno*, 302 N. Y. 884, revg. 277 App. Div. 496.) In the *Kaplan* case (*supra*) it was said (p. 274): "Knowledge of the existence of a defect does not necessarily establish contributory negligence. (Citing cases.) One placed in the dilemma of abandoning the reasonable course of his work or assuming a risk will not be charged with contributory negligence as a matter of law if he adopts the latter alternative." (Citing cases.)

The judgment appealed from should be reversed and a new trial granted.

RABIN and EAGER, JJ., concur with BREITEL, J.; BASTOW, J., dissents in opinion in which BOTEIN, P. J., concurs.

Judgment, so far as appealed from, affirmed, with costs to the respondents.