**Francis C. PERKINS, Plaintiff,**

**v.**

**HENRY J. KAISER CONSTRUCTION COMPANY, a corporation, Defendant.**

**No. 2134.**

United States District Court
S. D. West Virginia,
Charleston Division.

Feb. 20, 1964.

&ast; &ast; &ast; &ast; &ast;

George A. Daugherty, Charleston, W. Va., for plaintiff.

Steptoe & Johnson, by Stanley C. Morris and Charles W. Yeager, Charleston, W. Va., for defendant.

FIELD, Chief Judge.

In this action the plaintiff, Francis C. Perkins, was awarded a jury verdict in the sum of $25,000.00. The defendant has filed its motion under Rule 50(b) for judgment n. o. v. or in the alternative for a new trial.

The facts material to a disposition of these motions are briefly as follows: Defendant, Kaiser Construction Company, was general contractor for the erection of the plant of Kaiser Aluminum and Chemical Company at Ravenswood, West Virginia. The plaintiff, Francis C. Perkins, was employed as a millwright by Surface Combustion Corporation, a corporation, which had a contract directly with Kaiser Aluminum for certain phases of the work. Under the circumstances both Kaiser Construction and Surface were prime contractors with Kaiser Aluminum although as has been stated, Kaiser Construction occupied the posture of general contractor in the construction.

In one portion of the plant a basement or pit was excavated and constructed for the purpose of accommodating ten coil annealing furnaces. The floor of this basement was about fifteen feet below the main floor of the plant. At the time of the accident the bottom half of the rectangular box shaped furnaces had been installed in this pit and the tops of these portions of the furnaces extended up to about the level of the main floor. The furnaces were approximately forty feet long, twenty feet wide and seven feet deep and at the time of the accident were open at the top. Each of these furnace assemblies rested upon twelve pillars some seven feet high. Each furnace was some six or seven feet from the edge of the concrete ground floor. There were four openings or circular holes in the bottom of each furnace, and during the early part of the work employees of all the contractors, including Surface, would use ladders in descending from the ground floor into the bottom of the pit. The employees of Surface who were working on the furnaces would then use ladders to gain access to the furnaces through the holes

or openings in the bottom of these furnaces.

It apparently was originally understood or agreed that Surface would construct some means of access from the ground floor to the several furnaces as the work progress might demand. It appears that Surface started the construction of such access ways but was required to discontinue this work and remove the access ways as a result of some union controversy. Thereafter to meet the need for access, defendant, Kaiser Construction, installed a platform at the ground floor level and a stairway leading down into the pit. This stairway was designed for use throughout the construction period until it might be replaced by a permanent stairway. One end of the platform portion of this structure rested on the edge of the cement ground floor of the building and the other end rested on the top edge of the bottom half of furnace No. 2, the scene of this accident. The stairway was attached to this platform and led down into the basement. To provide access the platform was, of course, open on the end which rested on the cement floor. There were uprights on either side and on the end of the platform which rested on the furnace to which uprights handrails were nailed. These handrails left open the space leading to the stairway and apparently the stairway also had handrails of similar construction.

[1] On the end of the platform which rested upon the edge of the furnace, a one-by-six plank of lumber was nailed to the two uprights. The two uprights to which this plank was nailed were not opposite each other and, accordingly, the plank was in a diagonal position with respect to the end of the platform. The plaintiff's evidence was to the effect that the plank was secured to the uprights by the means of one eightpenny nail in each upright. The evidence of the defendant was to the effect that two sixteenpenny nails secured the plank to each of the uprights. However, for the purpose of passing on this motion, I must necessarily consider it in the light of the evidence most favorable to the plaintiff's position.

The platform and stairway were used not only by the employees of Kaiser Construction, but also by the employees of other contractors on the job including the employees of Surface Combustion. The accident which gave rise to this litigation occurred on July 19, 1957. At that time the plaintiff had been working as an employee of Surface on the Kaiser job from about the first day of July. He had worked at the installation site of the No. 2 furnace for one or two days prior to July 19. On the occasions prior to the accident the plaintiff had used the stairway to go to and from the basement or pit level and a ladder to gain access to the furnace through one of the holes in the bottom of the furnace. The accident occurred on the first occasion on which the plaintiff deviated from the use of the stairway as a means of access. On this occasion the plaintiff had returned to the platform from the plant with a sack of bolts in his right hand. Instead of using the stairs he crawled under the one-by-six plank at the end of the platform and after crawling under he reached up and grabbed the plank to assist him in getting to an upright position. While the plaintiff was thus endeavoring to lift himself the plank pulled loose and he fell backward into the furnace receiving the injuries for which he brought this action.

Defendant's first argument in support of its motion is that Perkins was in the status of a licensee in his use of the platform and stairway, and accordingly, could recover only if his injury resulted from some wilful or wanton act of the defendant or what has been sometimes characterized as "active negligence." Counsel contend that for Perkins to attain the more favorable status of an invitee it was necessary that he bring himself within the ambit of the "mutual advantage" theory. In support of this position defendant cites the cases of Arthur v. Standard Engineering Co., 89 U.S.App.D.C. 399, 193 F.2d 903, 32 A.L. R.2d 408 (1951); Eddy v. John J. Brady

Plastering Co., 111 Ohio App. 190, 171 N.E.2d 722 (1959); and Brauner v. Leutz, 293 Ky. 406, 169 S.W.2d 4 (1943). The rationale of this line of cases was stated in Standard Engineering as follows (193 F.2d at pg. 907):

"The true test under the mutual advantage theory is whether the owner of a scaffold or other appliance receives benefit or advantage from the permitted use by another of that particular piece of equipment. If so, the user is an invitee; if not, he is a licensee."

A more liberal attitude has been indicated in what is termed the "reasonable convenience" rule. In Quigley v. Thatcher, 207 N.Y. 66, 100 N.E. 596 (1912), a general contractor had erected a scaffold or platform for the use of his own employees. The Court held that since the facility was located in such a place that a subcontractor might of necessity or under the requirements of reasonable convenience use it, the general contractor should have anticipated such use and was liable to the subcontractor and his employees for the safety thereof. In the later case of McGlone v. William Angus, Inc., 248 N.Y. 197, 161 N.E. 469, the New York Court stated the principle (at pg. 470):

"Negligence is gauged by the ability to anticipate. The Angus Company apparently knew that its men were not the only ones at work upon the building. As the iron work went up, the stone work soon followed. Both classes of employees were working together. When the Angus Company placed boards over the iron beams forming a scaffold or flooring for its derricks, could it reasonably anticipate that other workmen on the structure would walk over the flooring? On the evidence this was a question for the jury. * * * Under these circumstances and conditions, if reasonable care would have anticipated such use, then it was the duty of the defendant to erect its platform or flooring with due regard of the user by others; that is, it was under the duty to use reasonable care to construct it safely for those whom it had reason to anticipate would naturally and customarily use it in the course of the work."

It is interesting to note that in its approach to the problem the New York Court did not find it necessary to categorize the status of the plaintiff as an invitee or licensee in either of the New York cases.

In the Fourth Circuit case of Holcombe v. Buckland, 130 F.2d 544 (1942), the defendant took the position that the plaintiffs in their use of the cage and monorail were bare licensees and therefore he owed them no duty to maintain the equipment in a safe condition for their use and convenience. After reviewing a number of cases with respect to licensees, Judge Soper observed (at pg. 547):

"In all of these formulae there is manifest an effort on the part of the courts to express the idea that a licensee is not entirely outside the pale of the protection of the law and that situations frequently occur in which the ordinary requirements of humanity give rise to a duty on the part of an occupant of premises to look out for the safety of one who comes upon the premises with the permission of the occupant. * * * [T]he defendant knowingly failed to replace the fishplate at the joint in the monorail, thereby creating a condition which it realized involved an unreasonable risk that the plaintiffs could not reasonably be expected to discover. Nevertheless, the defendant made no effort to correct the defect or to warn the plaintiffs of their danger. No argument is needed to show that it would not be consistent with sound morals to exculpate from all liability one who manifests so little regard for the rights of others, and in this instance the dictates of morality find a sanction in the established rules of law. There was

no error in the refusal of the District Judge to direct a verdict for the defendant."

■ In the present case I am inclined to the opinion that the duty was cast upon the defendant to use reasonable care to construct the platform and stairway safely not only for the use of its own employees, but others, including the plaintiff, whom it had reason to anticipate would use the facility. Defendant knew this was the only means of getting to and from the pit during the course of construction, and was aware that it necessarily would be used by the employees of other contractors as well as its own. Since defendant was the general contractor, it could be argued with considerable logic that the use of the stairways by the employees of Surface to complete its phase of the project was "mutually advantageous" to the defendant in expeditiously finalizing the plant construction.

■ This conclusion on the defendant's duty is not, however, dispositive of the issue presented on this motion for the defendant's duty was limited to those uses of the facility for which it was furnished or constructed and which therefore should reasonably have been anticipated. In every case sustaining liability, including the Holcombe case, the plaintiff was using the facility at the time of injury for precisely the purpose and in the manner for which it was designed. Here, as counsel for defendant have pointed out, the handrail did not fail in its use as a handrail, but only failed as the result of Perkins' attempt to use it to support his weight by pulling upon it after crawling under it for more convenient access to the furnace—the first time, incidentally, that he attempted to use it for that purpose. On this aspect of the problem, I find the language of the Court in Pettyjohn & Sons v. Basham, 126 Va. 72, 100 S.E. 813, 38 A.L.R. 391 (1919) appropriate (at pg. 816):

" * * * As applied to the case at bar, the evidence does not establish anything more than a permissive use of the scaffold, a use as a licensee, or, if it can be so extended as to amount to an invitation, the invitation is limited to a use for work to be done while standing on the scaffold. If an invitation is to be implied at all, it is restricted to such a use as was reasonably necessary, and is not extended to uses not contemplated nor reasonably to be expected, though apparently convenient."

In the case of Meny v. Carlson, 6 N.J. 82, 77 A.2d 245, 22 A.L.R.2d 1160 (1950), a scaffold case relied upon by the plaintiff, the Court refers to the following language from the Restatement of the Law, Torts, Vol. 2, Sec. 392, page 1064:

" 'One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied:

" '(a) If the supplier has failed to exercise reasonable care to make the chattel safe for the use for which it is supplied, * * *.' "

It will be noted that under the Restatement rule liability is limited to "harm caused by the use of the chattel *in the manner* * * * for which it is supplied." This limitation upon the scope of defendant's duty was also recognized in Holgerson v. South 45th St. Garage, Inc., 16 A.D.2d 255, 227 N.Y.S.2d 195 (1st Dept.N.Y.1962) and Cohn v. Sekosky, 157 App.Div. 196, 141 N.Y.S. 811 (1913).

In the light of these authorities I have concluded that it was error to submit this case to the jury since the plaintiff's injury did not proximately result from the breach of any duty owed to him by defendant in the use plaintiff was making of the facility at the time of

this unfortunate occurrence. The motion for judgment n. o. v. will be granted, the alternate motion for a new trial denied, and counsel may prepare an appropriate order, incorporating this opinion by reference therein.